**Harold C. RIETHMAN, et al., Plaintiffs,**

v.

**Isobel BERRY, et al., Defendants.**

**No. CIV. A. 98–5031.**

United States District Court, E.D. Pennsylvania.

Sept. 15, 2000.

H. Graham McDonald, Turner and Mc Donald, Philadelphia, PA, for Harold C. Riethman.

Harold C. Riethman, Havertown, PA, pro se.

Kathleen Tia Burke, Christie, Pabarue, Mortensen & Young, Philadelphia, PA, James W. Christie, Christie, Pabarue, Mortensen and Young, Philadelphia, PA, for Isobel Berry, David Culp, Berry and Culp.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION

In this case, the court is called upon to interpret two (2) statutes designed to cover consumer credit transactions in the context of an attorney-client relationship. The plaintiffs, Harold C. Riethman and Vicki A. Hagel, husband and wife ("plaintiffs"), brought this action against the defendants, Isobel Berry, David Culp, and Berry and Culp, P.C. (collectively "defendants"), two (2) attorneys and their law firm, alleging violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C.A. § 1691 *et seq.* and the Truth In Lending Act ("TILA"), 15 U.S.C.A. § 1601 *et seq.* and asserting various state law claims. TILA is a disclosure statute primarily designed to ensure that a potential debtor is provided with all pertinent information. On the other hand, ECOA is an anti-discrimination statute which prohibits creditors from discriminating in the extension of credit.

Plaintiffs allege that defendants violated ECOA by requiring plaintiff Hagel to co-sign a fee agreement which plaintiff Riethman had already signed without first determining that plaintiff Riethman was unable to comply with the terms of the fee agreement. Plaintiffs allege that defendants violated TILA by, *inter alia,* imposing an interest charge on unpaid legal fees without providing accompanying disclosures required by TILA. At the completion of discovery, defendants filed a motion for partial summary judgment on plaintiffs' ECOA and TILA claims. Because defendants are not "creditors" subject to either ECOA or TILA, defendants' motion will be granted.

## II. FACTS

The following facts are uncontested or viewed in the light most favorable to plaintiffs. Beginning in February, 1995, defendants provided legal representation to plaintiff Riethman in both divorce litigation and a resulting child custody dispute. According to a fee agreement dated February 20, 1995 ("the 1995 agreement"), defendants were to bill plaintiff Riethman on a monthly basis, and plaintiff Riethman was required to pay all outstanding bills in full within thirty (30) days. In May, 1998, prior to resolution of his custody dispute, plaintiff Riethman became financially unable to comply with the terms of the 1995 agreement. At the request of plaintiff Riethman, defendants agreed to modify the 1995 agreement to create a payment plan for plaintiff Riethman ("the 1998 agreement"). Under the 1998 agreement, plaintiff Riethman was required to make an initial payment of $1,000.00 and monthly payments of at least $500.00 until his outstanding balance was paid in full. The 1998 agreement also imposed an interest charge of 18% "per annum" on any unpaid

balance. Initially, only plaintiff Riethman signed the 1998 agreement. Later, upon defendants' request, plaintiff Hagel also co-signed the 1998 agreement.

In September, 1998, during plaintiff Riethman's custody trial, plaintiffs received a bill from defendants in an amount exceeding $26,000.00 for services rendered in connection with one day of the custody trial. According to plaintiffs, defendants had previously estimated that the cost for the entire custody trial would be approximately $13,000.00. Plaintiff Riethman, in turn, requested that defendants reduce their $26,000.00 bill. Defendants declined and refused to perform further services for plaintiff Riethman until they were paid in full. Plaintiffs responded by initiating this lawsuit.

Plaintiffs claim that by requiring plaintiff Hagel to co-sign the 1998 agreement without first determining that plaintiff Riethman was unable to comply with the terms of the 1998 agreement, defendants discriminated against plaintiff Riethman based upon his marital status in the extension of credit, in violation of ECOA. Plaintiffs also contend that defendants violated TILA by including a finance charge in the 1998 agreement without providing the requisite TILA disclosures. Under TILA a creditor who imposes a finance charge on the extension of credit must provide the debtor with certain information about the finance charge. According to plaintiffs, the interest charge contained in the 1998 agreement is a finance charge under TILA which is not accompanied by the required disclosures.

In response to plaintiffs' claims, defendants simply argue that they do not "regularly" extend "credit" to their clients, and therefore, they are not "creditors" subject to either ECOA or TILA.

## III. LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where the movant is the party bearing the burden of proof at trial, it must come forward with evidence entitling it to a directed verdict. *Paramount Aviation Corp. v. Augusta,* 178 F.3d 132, 146 (3d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 188, 145 L.Ed.2d 158 (1999). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of N. America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. ANALYSIS

The issue of whether defendants are "creditors" subject to ECOA and TILA requires the court to inquire into defendants' customary billing practices. Plaintiffs point to fee agreements ("the fee agreements") covering a two (2) year period for several of defendants' present and former clients which require all outstanding bills to be paid in full either immediately or within thirty (30) days. The fee

agreements, however, provide that an interest charge will be imposed on any unpaid balance. Plaintiffs also point to billing invoices which indicate that for five (5) clients out of a group of ten (10), defendants continued to perform legal services on behalf of those clients even after they had not paid their bills in full when due.[1] The fee agreements and billing information, according to plaintiffs, establish that defendants are "creditors" under ECOA and TILA.

### A. Plaintiffs' ECOA Claim

 ECOA "was enacted to protect consumers from discrimination by financial institutions." *Midlantic National Bank v. Hansen,* 48 F.3d 693, 699 (3d Cir.1995).[2] Under ECOA, "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... marital status." 15 U.S.C.A. § 1691(a)(1). A "creditor" is "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit...." 15 U.S.C.A. § 1691a(e).[3] Under ECOA, "credit" is "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment or to purchase property or services and defer payment thereof." 15 U.S.C.A. § 1691a(d).[4]

Thus, the issue presented is whether defendants "regularly" grant their clients the right "to defer payment of debt or to incur debt and defer its payment or to purchase property or services and defer payment thereof." 15 U.S.C.A. § 1691a(d); *see also* 12 C.F.R. § 202.2(j).

The *sine qua non* of "credit" under ECOA is a *right* held by the debtor to defer payment of existing debt or to incur future debt and defer its payment. *See* 15 U.S.C.A. § 1691a(d); *see also* 12 C.F.R. § 202.2(j)(emphasis added). In other words, it is insufficient to trigger ECOA coverage to show that a debtor failed to pay a debt or that a creditor voluntarily chose to delay collection and continue to perform work on behalf of the debtor. The key element which must be shown is whether, under the agreement between the debtor and the creditor, the debtor has a right to defer payment of existing debt or to incur future debt and defer payment at its sole discretion.

Plaintiffs concede that the fee agreements entered into by defendants with their clients on their face did not grant defendants' clients a right to defer payment of existing debt or to incur future debt and defer its payment. *See* Transcript of July 12, 2000 Oral Argument (doc. no. 41), p. 38. Plaintiffs contend, however, under an estoppel theory, that defendants' practice of continuing to perform legal services for clients who have not paid their bills in full when due modified the fee agreements and *de facto* granted defendants' clients the right to defer payment of

1. The fee agreements and billing information were produced during limited discovery permitted by the court on plaintiffs' ECOA and TILA claims. *See* Doc. Nos. 18, 30, and 32. The court limited plaintiffs' access to defendants' billing invoices to a random sample of ten (10) clients.

2. In ECOA, Congress directed the Board of Governors of the Federal Reserve System ("the Board") to create regulations implementing the purposes of ECOA. *See Silverman v. Eastrich Multiple Investor Fund, L.P.,* 51 F.3d 28, 30 (3d Cir.1995); *Hansen,* 48 F.3d at 699; 15 U.S.C.A. § 1691b(a)(1) ("The Board shall prescribe regulations to carry out the

purposes of this subchapter."). Pursuant to its authority under ECOA, the Board created a series of regulations designed to implement ECOA called Regulation B.

3. ECOA does not contain a number of credit transactions in which a person must extend credit within a particular period of time in order to "regularly" extend credit.

4. Regulation B further explains that "[c]redit means the right granted by a creditor to an applicant to defer payment of a debt, incur debt and defer its payment, or purchase property or services and defer payment therefor." 12 C.F.R. § 202.2(j).

existing debt or to incur future debt and defer its payment.

According to Pennsylvania contract law, "under an estoppel concept, a contract may be modified if either words or actions of one party to the contract induce another party to the contract to act in derogation of that contract, and the other justifiably relies upon the words or deeds of the first party."[5] *Kreutzer v. Monterey County Herald Company*, 560 Pa. 600, 747 A.2d 358, 362 (2000). Therefore, for estoppel to apply in this case, plaintiffs would have to establish the absurd proposition that defendants' clients were induced to stop paying their bills in full on a timely basis in reliance upon defendants' conduct in continuing to perform legal services on their behalf even after their bills became due and were unpaid. Thus, since plaintiffs can not show that defendants' clients were induced by and relied upon defendants' conduct, the court concludes as a matter of law that estoppel does not modify the fee agreements.

Plaintiffs also argue that by adding an interest charge to the unpaid balance in the fee agreements, defendants "regularly" extended "credit" to their clients. According to plaintiffs, by doing so, defendants became "creditors" under ECOA. The court disagrees. The imposition of an "interest charge" on any outstanding balance does not constitute the extension of "credit" under ECOA because it does not grant the debtor the right to defer payment of debt. *See* 15 U.S.C.A. § 1691a(d)(defining "credit"). Nor is the interest applied to the outstanding debt a charge assessed by the creditor for the use of money. Rather, the charge is a penalty for non-payment.

*See generally Pollice v. National Tax Funding, L.P.*, 2000 WL 1225773, at *9 (3d Cir. Aug.29, 2000)(explaining the practical difference between the imposition of interest and penalties).

Finally, plaintiffs have failed to show that defendants extended "credit" to any clients other than plaintiffs within a two (2) year period. While ECOA contains no minimum number of credit extensions required for a person to "regularly" extend credit, the court concludes as a matter of law that one extension of credit over two (2) years does not constitute the "regular" extension of credit.

Therefore, because plaintiffs have failed to raise a genuine issue of material fact as to whether defendants are "creditors" subject to ECOA, defendants are entitled to judgment on plaintiffs' ECOA claim.[6]

### B. Plaintiffs' TILA Claim

TILA is designed to address the 'divergent and often fraudulent practices by which credit customers were apprised of the terms of the credit extended to them.' *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3d Cir.1990)(*quoting Johnson v. McCrackin–Sturman Ford, Inc.*, 527 F.2d 257, 262 (3d Cir.1975)). By enacting TILA, Congress sought "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C.A. § 1601(a).[7]

Under TILA, a "creditor" is a "person who ... regularly extends ... consumer

---

5. A contract also may be modified "by a subsequent agreement which is supported by legally sufficient consideration...." *Kreutzer*, 747 A.2d at 362. Plaintiffs, however, do not allege that modification of the fee agreements occurred through a subsequent agreement, either oral or written.

6. Defendants raise several other arguments in opposition to plaintiffs' ECOA claim. Given the court's disposition of plaintiffs' ECOA

claim, however, it is unnecessary to address those arguments at this time.

7. Similar to ECOA, "Congress has specifically designated the Federal Reserve Board and staff as the primary source for interpretation and application of truth-in-lending law." *Ford Motor Credit Company v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980); *see also* 15 U.S.C.A. § 1604(a) ("The Board shall prescribe regulations to carry out the purposes of this subchapter."). Also like

credit...." 15 U.S.C.A. § 1602(f). "A person regularly extends ... credit only if it extended credit ... more than 25 times ... in the preceding calendar year ... [or] the current calendar year." 12 C.F.R. § 226.2, n.1 ("Regulation Z"). Like ECOA, TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C.A. § 1602(e).

Because here, just as in plaintiffs' ECOA claim, plaintiffs have failed to show that defendants have granted to any clients other than plaintiffs the right to defer payment of existing debt or to incur future debt and defer its payment, defendants are likewise entitled to judgment on plaintiffs' TILA claim.[8]

## V. CONCLUSION

Because they are not "creditors" subject to either ECOA or TILA, defendants are entitled to judgment on plaintiffs' ECOA and TILA claims.

the administrative scheme found in ECOA, pursuant to its authority under TILA, the Federal Reserve Board ("the Board") has promulgated a group of regulations designed to implement TILA called Regulation Z. The Supreme Court has instructed that the pronouncements of the Board or its staff interpreting TILA and/or Regulation Z, when applicable, are to be "dispositive unless [they are] demonstrably irrational." *Milhollin*, 100 S.Ct. at 797, 797 n. 9; *see also Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981)(*citing Milhollin*).

8. All of plaintiffs' federal claims having been adjudicated, the court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims.