**Harold C. RIETHMAN; Vicki A. Hagel, Appellants,**

v.

**Isobel BERRY; David Culp; Berry and Culp (a/k/a Berry and Culp, P.C.).**

No. 00–3509.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) April 1, 2002.

Filed April 19, 2002.

H. Graham McDonald, Alan A. Turner, Turner & McDonald, Philadelphia, PA, for Appellants.

James W. Christie, Christie, Pabarue, Mortensen & Young Philadelphia, PA, for Appellees.

Before SLOVITER, FUENTES and MICHEL,* Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

The issue presented in this case is a novel one for this court: whether the defendant lawyers are "creditors" under the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 *et seq.*, and the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, who were therefore obliged to follow the requirements of those statutes in their

---

* Hon. Paul R. Michel, United States Court of Appeals for the Federal Circuit, sitting by designation.

dealings with their clients, the plaintiffs in this case. The District Court decided they were not covered by those statutes. Plaintiffs Harold C. Riethman and his wife Vicki A. Hagel appeal the District Court's order granting summary judgment and dismissing their suit against their former attorneys, Isobel Berry and David Culp and the law firm Berry & Culp (collectively, Berry & Culp). The District Court had jurisdiction under 15 U.S.C. §§ 1691e(f), 1640(e) and 28 U.S.C. § 1331. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## I.

Riethman and Hagel filed suit, claiming that Berry & Culp's fee agreement failed to comply with various requirements of the ECOA and the TILA. The District Court concluded the ECOA and the TILA did not apply to the Riethman/Hagel fee agreement with Berry & Culp because neither the firm nor the attorneys are creditors as defined in those statutes.

Riethman had previously retained Berry & Culp in divorce litigation. He then retained the firm in connection with an ensuing child custody battle with his former wife. The initial fee agreement between Riethman and counsel dated February 20, 1995 (the 1995 agreement) provided for billing on a monthly basis. In 1998, the parties modified their 1995 agreement at Riethman's request to permit Riethman to make smaller progress payments instead of paying the full amount due each month (the 1998 agreement). Although Vicki Hagel, Riethman's new wife, had not been a party to the 1995 agreement, she signed the 1998 agreement. During the custody trial, a fee dispute between Berry & Culp and Riethman and Hagel culminated in

Berry & Culp withdrawing as counsel. Riethman and Hagel then initiated this suit.

## II.

The issue before us is limited to the District Court's dismissal of the ECOA and TILA claims.[1] Riethman and Hagel primarily argue that the District Court erred as a matter of law by failing to conclude that Berry & Culp are "creditors." This court exercises plenary review over a district court's grant of summary judgment. *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 n. 3 (3d Cir.1998). Summary judgment was appropriate if "the record, when viewed in the light most favorable to [Riethman and Hagel], shows that there is no genuine issue of material fact and that [Berry & Culp were] entitled to summary judgment as a matter of law." Id.

In enacting the ECOA, Congress found that "there is a need to insure that the various financial institutions and other firms engaged in the extensions of credit exercise their responsibility to make credit available with fairness, impartiality, and without discrimination on the basis of sex or marital status." Equal Credit Opportunity Act, Pub.L. No. 93–495, § 502, 88 Stat. 1521, 1521 (1974). The congressional statement of purpose continues: "Economic stabilization would be enhanced and competition among the various financial institutions and other firms engaged in the extension of credit would be strengthened by an absence of discrimination on the basis of sex or marital status, as well as by the informed use of credit which Congress has heretofore sought to promote." *Id.* The Act makes it unlawful for any creditor to discriminate against any applicant with

---

**1.** Riethman and Hagel had also included various state claims in their complaint. Once the federal claims were adjudicated, the District Court declined to exercise supplemental jurisdiction over the remaining state law claims.

respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital status or age; because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. 15 U.S.C. § 1691(a).

In relevant part, the ECOA defines a "creditor" as "any person who regularly extends, renews, or continues credit." 15 U.S.C. § 1691a(e); *see also* 12 C.F.R. § 202.2(*l*) (2001) (Regulation B). "Credit," in turn, is defined as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d).

■ Riethman and Hagel contend that Berry & Culp were creditors because they regularly extended credit by providing legal services without requiring immediate payment. The District Court evaluated this claim by examining a random cross-section of Berry & Culp's billing agreements and invoices. Most of the billing agreements considered provided for outstanding charges to be paid in full within thirty days, with an interest charge to be imposed on unpaid balances. Riethman and Hagel concede that "these fee agreements, . . . were almost identical to the [the 1995 agreement]." Br. of Appellants at 17. Of the ten clients whose bills the District Court considered, Berry & Culp continued to perform legal services for at least half despite the failure of some clients to pay bills as they became due.

The District Court rejected the contention that Berry & Culp were creditors because, other than Riethman and Hagel under the 1998 agreement, none of Berry & Culp's defaulting clients had a "right" to defer payment. The court observed, "it is insufficient to trigger ECOA coverage to show that a debtor failed to pay a debt or that a creditor voluntarily chose to delay collection and continue[d] to perform work on behalf of the debtor. The key element . . . is whether, under the agreement between the debtor and the creditor, the debtor has a right to defer payment of existing debt or to incur future debt and defer payment at its sole discretion." *Riethman v. Berry*, 113 F.Supp.2d 765, 768 (E.D.Pa.2000).

We agree with the District Court. The hallmark of "credit" under the ECOA is the right of one party to make deferred payment. The courts have consistently so held. *See, e.g., Shaumyan v. Sidetex Co.*, 900 F.2d 16, 18 (2d Cir.1990) ("[I]t is apparent that the ECOA extends only to instances in which the right to defer payment of an obligation is granted. Absent a right to defer payment for a monetary debt, property or services, the ECOA is inapplicable."); *Williams v. AT & T Wireless Servs., Inc.*, 5 F.Supp.2d 1142, 1145 (W.D.Wash.1998); *Butler v. Capitol Fed. Sav.*, 904 F.Supp. 1230, 1234 (D.Kan.1995); *Dunn v. American Express Co.*, 529 F.Supp. 633, 634 (D.Colo.1982); *cf.,* Brian S. Prestes, Comment, *Application of the Equal Credit Opportunity Act to Housing Leases*, 67 U. Chi. L.Rev. 865, 879 & n. 89 (2000) (discussing cases).

■ Riethman and Hagel appear to contend that Berry & Culp's failure to enforce their right to prompt payment gave their clients a unilateral right to defer payments. This position is inconsistent with ordinary principles of contract interpretation. Although courts use course of performance and course of dealing in interpreting contract terms, "express terms are given greater weight than course of performance[ and] course of dealing." Restatement (Second) of Contracts § 203(b) (1981).

Even if Berry & Culp failed to strictly enforce their rights against tardy clients, the express terms of their fee agreements plainly manifest their right to prompt and full payments. Contrary to Riethman and Hagel's suggestion, the fact that counsel permitted their clients to pay by check or credit card, or provided legal services prior to receiving a retainer, does not alone bring them within the ECOA.

Riethman and Hagel have not identified any language in the legislative history of the ECOA that suggests that Congress was thinking about payment of legal fees when it enacted the ECOA. We do not suggest that lawyers are ipso facto exempt from the statute. We note, however, the breadth of the argument that Riethman and Hagel make in their brief:

> It is hard to imagine a lawyer with a litigation-oriented practice who performs work for a client on an hourly basis and who does not regularly extend credit to clients in the form of post-service billing. It is the nature of litigation that the court systems require that an attorney perform tasks on the court's schedule, not on a schedule designed to fit a client's budget or cash flow. And when an attorney finds a receivable building [sic], nonetheless the attorney is required by the court rules and the Rules of Professional Conduct to continue with the required work until either new counsel enters his appearance, or a Motion to Withdraw is granted. Pa. R. Civ. P. 1012(b). A lawyer's duty to the Court requires no less. The point of this analysis is that an hourly paid litigation lawyer is a lawyer who regularly extends credit, whether by choice or not. If this circumstance means that such a lawyer is necessarily subject to the ECOA, and therefore cannot require a client to obtain a co-signer on a fee agreement without first determining the client is not creditworthy, and further can not require a co-signer in such an instance to be the client's spouse, this was the decision of Congress and the Federal Reserve Board (through the promulgation of Regulation B) and cannot be ignored by a court.

Br. of Appellants at 23.

The Court of Appeals for the Second Circuit rejected a comparably broad argument in *Shaumyan v. Sidetex Co.*, 900 F.2d 16 (2d Cir.1990). In that case the plaintiffs contended that the ECOA applied to a home improvement contract that called for progress payments. They had argued that a service contract is a "credit transaction" subject to the ECOA unless payment for services rendered is simultaneous with the performance of the services. *Id.* at 18–19. The court pointed out that imposing a requirement of simultaneous performance would transform into credit transactions "countless transactions in which compensation for services is not instantaneous.... Such indiscriminate application of the ECOA is not appropriate." *Id.* at 19. Similarly, in addition to attorneys' fees, Riethman and Hagel's interpretation of the ECOA would embrace doctors' fees, dentists' fees, accountants' fees, psychologists' fees and virtually all other professional fees. In view of the statutory purpose underlying the ECOA, it seems implausible that Congress intended to cover not only banks and other such financial institutions but also all professions.

■ The Federal Reserve Board's Regulation B defines "extending credit" and "extension of credit" as, inter alia, "the continuance of existing credit without any special effort to collect at or after maturity." 12 C.F.R. § 202.2(q). Riethman and Hagel suggest that this regulation demonstrates that Berry & Culp's leniency toward enforcing their contractual rights subjects them to the ECOA. But this pro-

vision of Regulation B presupposes an already existing credit relationship between the parties. Unless the fee agreements themselves are credit transactions, the failure of Berry & Culp to collect after "maturity" cannot be an extension of credit. Because the fee agreements do not themselves extend credit, failure to enforce them was not the continuance of existing credit. Even assuming plaintiffs' 1998 agreement did extend credit, it is clear that their 1995 agreement did not. Nor did the agreements of the other clients reviewed by the District Court. Therefore, defendant law firm cannot be equated with one "who *regularly* extends, renews, or continues credit." 15 U.S.C. § 1691a(e) (emphasis added).

Finally, Riethman and Hagel point to *In re Brazil*, 21 B.R. 333, 334 (Bankr. N.D.Ohio 1982), in which a bankruptcy court held that a local gas company was "a creditor [under the ECOA] as it regularly provides gas to its customers, prior to being paid therefore." The quoted phrase is the extent of the court's analysis of the term "creditor."[2] We decline Riethman and Hagel's invitation to follow that decision and conclude that the District Court did not err when it held that Berry & Culp were not creditors under the ECOA.

## III.

The other statute on which Riethman and Hagel base their claim, the Truth in Lending Act (TILA), is designed to strengthen the national economy by enhancing the informed use of credit. It requires creditors to accurately and meaningfully disclose all credit terms. 15 U.S.C. § 1601(a). Under the TILA, a

"creditor" is, in relevant part, a person or entity which regularly extends consumer credit. 15 U.S.C. § 1602(f). Similarly to the ECOA, the TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(e). In addition, the Federal Reserve's TILA regulation, 12 C.F.R. § 226.2(a)(17) n. 3, specifically defines the TILA statutory term "regularly" as extending credit within the last twelve months "more than 25 times." Riethman and Hagel concede that the "ECOA applies to a broader category of cases than [the TILA]." Br. of Appellant at 15 n. 11. As discussed above, Berry & Culp did not grant clients the right to defer payment. It follows that the TILA is inapplicable.

## IV.

For the reasons set forth, we will affirm the judgment of the District Court.

---

2. In *Brazil*, the utility had suggested that the debtor's husband would have to move out of the family's home for her to continue to receive gas. The court augmented its application of the ECOA by observing that the gas company's "position with respect to debtor's application is against public policy and against good social and religious morals." *Id.* at 335.