COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-440-CV

 

 

CAROLYN JONES                                                                APPELLANT

 

                                                   V.

 

CITIBANK (SOUTH DAKOTA), N.A.                                           APPELLEE

 

                                              ------------

 

          FROM
COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction

Pro se appellant Carolyn
Jones appeals from the trial court=s order granting summary judgment in favor of appellee Citibank (South
Dakota), N.A.  Because we conclude that
appellee negated appellant=s claims as a matter of law, we affirm the trial court=s judgment. 

 

 








II.  Background Facts

Appellant opened a credit
card account with appellee in December 1998. For over six years, appellant used
the card to purchase and finance 
merchandise, food, clothing, tickets to sporting events, a trip to
Hawaii, and other items.  Appellant also
paid portions of the outstanding balance on the account during most of that
time.  In spring 2004, however, appellant=s payments were less than the minimum required by appellee, and in May
2004, she stopped repaying the debt altogether. 
Appellee sued appellant in October 2004 to recover the remaining portion
of the unpaid account balance, $8,914.15. 
With its original petition, appellee included requests for disclosures
and admissions.  Appellant timely
responded to this first set of requests and filed an answer asserting several
affirmative defenses and a counterclaim. 









On June 10, 2005, appellee
served appellant with a second set of requests for admissions.  Appellant=s responses to the requests were due thirty days later, but according
to appellee, appellant did not mail the responses until July 25, 2005; thus,
they were deemed admitted.  Tex. R. Civ. P. 198.2.[1]  In response, appellee filed a traditional
summary judgment motion regarding its contract claim against appellee and a
no-evidence summary judgment motion regarding appellant=s affirmative defenses and counterclaim.  Appellant responded to the motions but did
not move to withdraw her deemed admissions. 
Consequently, the trial court granted all of appellee=s summary judgment motions.[2]  Appellant appeals only the traditional
summary judgment ruling regarding the contract dispute. 

III.  Standard of Review

In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.








When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant's
favor.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).

The summary judgment will be
affirmed only if the record establishes that the movant has conclusively proved
all essential elements of the movant=s cause of action or defense as a matter of law.  Clear Creek Basin, 589 S.W.2d at 678. 

IV.  Existence of a Contract








In her first and fourth
issues, appellant complains that the trial court abused its discretion by
granting summary judgment based solely on her deemed admissions because no contract
between appellant and appellee ever existed in the first place.[3]  Appellee served appellant with two sets of
requests for admissions.  Appellant
answered the first set but did not timely answer the second set; the second set
of admissions negated any attempt by appellant to deny the existence of a
contract.  See Tex. R. Civ. P. 198.3; Marshall v. Vise, 767 S.W.2d 699, 700
(Tex. 1989) (holding that unanswered requests for admissions are automatically
deemed admitted unless court on motion permits withdrawal or amendment; once
admitted, admission is judicial admission, whether deemed or otherwise).  













Appellant=s deemed admissions show that no genuine issue of material fact
existed regarding whether appellant entered into a written agreement with
appellee, had a credit card account with appellee, used the card to purchase
items, or failed to pay her bill.[4]  See Marshall, 767 S.W.2d at 700.  Further, appellee=s motion for summary judgment was not based exclusively on deemed
admissions.  Its motion was supported by,
among other evidence, an affidavit of Terri Ryning, a custodian of records for
appellee.  The Ryning affidavit essentially
(1) authenticated the credit card agreement documents and monthly statements
and (2) stated the account balance that was due and unpaid.  The evidentiary foundation for Ryning=s personal
knowledge was provided by her statements that (1) she was a Vice President of
Citicorp Credit Services, Inc. (USA), a Aservicer@ for appellee, (2)
she was a custodian of appellee=s records, and (3)
her duties included having custody and control of records related to appellant=s account.  See, e.g., Radio Station KSCS v. Jennings,
750 S.W.2d 760, 761-62 (Tex. 1988) (providing that affidavits submitted in
support of motions for summary judgment shall be made on personal knowledge,
shall set forth such facts as would be admissible in evidence, and shall show
affirmatively that the affiant is competent to
testify to the matters stated therein).  Ryning also authenticated appellee=s business records including 101 pages of monthly account statements
beginning with a $0.00 balance on December 22, 1998, and ending on June 22,
2004, with an unpaid balance of $8,914.15. 
The Ryning affidavit also identified the account card agreement,
which contained the terms and conditions for appellant=s use of the account. Ryning noted that the Atotal amount due on the Account is $8,914.15,@ that the card agreement provided for appellant to pay Ainterest . . . attorney=s fees and court costs,@ and that, despite demand for payment, the amount due Aha[d] not been paid by@ appellant.

Appellant concedes that the
card account was hers and does not challenge the admissibility of the card
agreement, but instead argues that she had no contract with appellee because
the agreement was Aunsigned,
unilateral, [and] disputed.@  It is unclear from the record
whether the trial court considered federal law, Texas law, or South Dakota law
when making its determination on appellee=s motion for summary judgment. 
Appellant argues that South Dakota and federal law control.[5]  Regardless, the result is the same under each
of the three jurisdictions.         








Under federal law, the term Acredit@ means the
right granted by a creditor to a debtor to defer payment of debt or to incur
debt and defer its payment.  15 U.S.C.A. ' 1602(e) (West 1998). 
Thus, a credit card company extends credit to an individual when it
opens or renews an account, as well as when the cardholder actually uses the
credit card to make purchases.  Am.
Exp. Co. v. Koerner, 452 U.S. 233, 241, 101 S. Ct. 2281, 2286 (1981).  When the account is opened, the creditor has
granted a right Ato incur
debt and defer its payment,@ and when the account is used, the creditor has allowed the cardholder
Ato defer payment of debt.@  Id.; Riethman v.
Berry, 287 F.3d 274, 279 (3rd Cir. 2002) (construing Acreditor@ to mean
someone who enters into an agreement with another party who uses credit
to incur debt).  The issuance of a credit
card constitutes a credit offer, and the use of the card constitutes acceptance
of the offer.  Bank of Am. v. Jarczyk,
268 B.R. 17, 22 (Bankr. W.D.N.Y. 2001). 
Thus, a contract was formed here under federal law.  








Under Texas law, if one party
signs a contract, the other may accept by her acts, conduct, or acquiescence to
the terms of the contract, making it a binding agreement on both parties.  See MG Bldg. Materials, Ltd. v. Moses
Lopez Custom Homes, Inc., 179 S.W.3d 51, 61-62 (Tex. App.CSan Antonio 2005, pet. denied); Hearthshire Braeswood Plaza Ltd. P=ship v. Bill Kelly Co., 849 S.W.2d
380, 392 (Tex. App.CHouston
[14th Dist.] 1993, writ denied); see also Benser v. Citibank (South Dakota, N.A), No.
08-99-00242-CV, 2000 WL 1231386, at *5 (Tex. App.CEl Paso Aug. 31,
2000, no pet.) (not designated for publication) (concluding that appellant=s use of credit
card and payments to account showed he understood obligation to bank and that
contract had been formed).  Appellant does not dispute the validity of
the six years of account statements or that the card agreement was signed by
Ken Stork, the President and CEO of Citibank. 
Further, appellant does not dispute that she used her Citibank credit
card to purchase goods for over six years. 
Thus, even if appellant never signed the card agreement, under Texas
law, she entered into a contract with appellee by accepting the benefits of
their arrangement.  See MG Bldg.
Materials, Ltd., 179 S.W.3d at 62; Benser, 2000 WL 1231386, at *5.   

Further, a contract existed
under South Dakota law.  Appellee is a
national bank located in South Dakota and organized under the National Bank
Act.  See Smiley v. Citibank (South
Dakota), N.A., 517 U.S. 735, 744, 116 S. Ct. 1730, 1735 (1996).  Although neither party motioned the trial
court to take judicial notice of the laws of South Dakota, appellant noted in
her pleadings that the card agreement contained the language that it Ashall be governed by federal law and the law of South Dakota, where
[appellee is] located.@  Under South Dakota law,

[t]he use of an accepted credit card or the issuance of a credit card
agreement and the expiration of thirty days from the date of issuance without
written notice from a card holder to cancel the account creates a binding
contract between the card holder and the card issuer with reference to any
accepted credit card, and any charges made with the authorization of the
primary card holder. 

 








S.D. Codified Laws ' 54-11-9 (1983).  Again,
appellant does not dispute that she obtained and used the credit card account,
and she presented no evidence that she did not use the account or that she
cancelled the account within thirty days of issuance.  Thus, by using the credit card that appellee
issued to her, appellant entered into a binding contract with appellee under
South Dakota law.  Id.  

Because
appellant failed to dispute appellee=s evidence that she entered into a credit card agreement with
appellee, that the account was hers, or that she used the account, and because
appellant failed to provide evidence contradicting the validity of the card
agreement under Texas, South Dakota, or federal law, the trial court did not
err by granting summary judgment in favor of appellee.  Tex.
R. Civ. P. 166a(c); Sw. Elec. Power Co., 73 S.W.3d at 215.  Accordingly, we overrule appellant=s first and fourth issues.

V.  Appellant=s Arbitration Issues








In her
second and third issues, appellant argues that even if a contract existed,
appellee violated that contract by failing to submit the dispute to
arbitration.  A party seeking to
compel arbitration must first prove that an arbitration agreement exists and
that the claims asserted fall within the scope of the agreement.  In re Oakwood Mobile Homes, Inc., 987
S.W.2d 571, 573 (Tex. 1999) (orig. proceeding), abrogated in part on other
grounds by In re Halliburton Co., 80 S.W.3d 566 (Tex. 2002) (orig.
proceeding), cert. denied, 537 U.S. 1112 (2003); Grand Homes 96, L.P.
v. Loudermilk, 208 S.W.3d 696, 701 (Tex. App.CFort Worth 2006,
pet. filed).  Any doubts regarding the
existence or scope of an agreement are resolved in favor of arbitration.  In re FirstMerit Bank, N.A., 52 S.W.3d
749, 753 (Tex. 2001).

The
arbitration clause in the card agreement between appellant and appellee
provided that Aany dispute may
be resolved by binding arbitration.@  [Emphasis added.]  Further, the agreement provides that A[a]rbitration replaces the right to go to court,@ and either party Amay, without the other=s consent, elect mandatory, binding arbitration for any claim,
dispute, or controversy.@  This type of language is construed
broadly.  In re Conseco Fin. Serv.
Corp., 19 S.W.3d 562, 568 (Tex. App.CWaco 2000, orig.
proceeding).  It encompasses all claims
at issue unless Ait can be said with positive assurance
that an arbitration clause is not susceptible of an interpretation which would
cover the dispute at issue.@  Prudential Sec. Inc. v. Marshall, 909
S.W.2d 896, 899 (Tex. 1995) (orig. proceeding) (quoting Neal v. Hardee=s Food Sys., Inc., 918 F.2d 34, 37
(5th Cir. 1990)).








Appellee had a claim against appellant for
an unpaid credit card account balance, and appellant disputed that claim.  Therefore, both parties= claims fall
within the scope of the arbitration clause. 
See Pepe Int'l Dev. Co. v. Garcia, 915 S.W.2d 925, 931 (Tex. App.CHouston [1st
Dist.] 1996, orig. proceeding).  Appellee
asserts that appellant waived her right to arbitrate by failing to assert this
right before summary judgment was rendered. 
We agree.

Whether a party has waived its right to
arbitrate presents a question of law that we review de novo.  Oakwood Mobile Homes, Inc., 987 S.W.2d at
574; Loudermilk, 208 S.W.3d at 703. 
Because public policy favors arbitration, there is a strong presumption
against finding that a party has waived its right to arbitration; the burden to
prove waiver is thus a heavy one. In re Bruce Terminix Co., 988 S.W.2d
702, 704-05 (Tex. 1998) (orig. proceeding); EZ Pawn Corp. v. Mancias,
934 S.W.2d 87, 89 (Tex. 1996) (orig. proceeding); Loudermilk, 208 S.W.3d
at 703.  Any doubts regarding waiver are
resolved in favor of arbitration.  Bruce Terminix Co., 988 S.W.2d at 705; Loudermilk,
208 S.W.3d at 703.








Waiver may be express or implied, but it
must be intentional.  EZ Pawn Corp.,
934 S.W.2d at 89; Loudermilk, 208 S.W.3d at 703.  Whether waiver occurs depends on the
individual facts and circumstances of each case.  Loudermilk, 208 S.W.3d at 703; Williams
Indus., Inc. v. Earth Dev. Sys. Corp., 110 S.W.3d 131, 135 (Tex. App.CHouston [1st
Dist.] 2003, no pet.).  A party does not
waive arbitration merely by delay; instead, the party urging waiver must
establish that any delay resulted in prejudice.  Prudential Sec. Inc., 909 S.W.2d at 898; Loudermilk,
208 S.W.3d at 703.  A court may find
waiver only when (1) the party seeking arbitration has substantially invoked
the judicial process and (2) the party opposing arbitration suffers actual
prejudice as a result.  Bruce Terminix
Co., 988 S.W.2d at 704; Loudermilk, 208 S.W.3d at 704.

Courts will not find that a party has
waived its right to enforce an arbitration clause by merely taking part in
litigation unless it has substantially invoked the judicial process to its
opponent=s detriment.  Bruce Terminix Co., 988 S.W.2d at 704; Loudermilk,
208 S.W.3d at 704.  Substantially
invoking the judicial process may occur when the party seeking arbitration
actively tried, but failed, to achieve a satisfactory result in litigation
before turning to arbitration.  Loudermilk, 208 S.W.3d at 704; Williams
Indus., Inc., 110 S.W.3d at 135.













Here, appellant not only waited over two
years after appellee=s first petition was filed to request
arbitration, she filed numerous motions to dismiss, a counterclaim, and
oppositions to summary judgment in the two years of litigation.   Only after the trial court rendered summary
judgment against her did she assert her right to arbitration.  By the time
appellant finally requested arbitration of the dispute, appellee and appellee=s counsel had already prepared and filed several of their own motions
and responded to appellant=s motions to dismiss and counterclaim, and appellee had received a
favorable ruling from the trial court on its motion for summary judgment.  See Marble Slab Creamery, Inc. v. Wesic,
Inc., 823 S.W.2d 436, 439 (Tex. App.CHouston [14th Dist.] 1992, no writ) (holding that appellate court may
presume trial court took judicial notice of its own record and that trial court
record in that case supported prejudice element).  Under these circumstances, we hold that
appellant substantially invoked the litigation process to appellee=s detriment and, thus, waived her right to arbitrate the counterclaim.
 See Frye v. Paine, Webber, Jackson
& Curtis, Inc., 877 F.2d 396, 398 (5th Cir. 1989) (holding that party
waived arbitration by participating in trial that ended in mistrial), cert.
denied, 494 U.S. 1016 (1990); Miller Brewing Co. v. Fort Worth Distrib.
Co., 781 F.2d 494, 497-98 (5th Cir. 1986) (holding that party waived
arbitration by filing multiple lawsuits);[6]
see also In re Serv. Corp. Int=l, 85 S.W.3d 171, 175 (Tex.
2002) (orig. proceeding) (AThe Fifth Circuit has held that >a party only invokes the judicial process to the extent it litigates a
specific claim it subsequently seeks to arbitrate.=@).  Because appellant waived her
right to arbitrate the contract dispute, the trial court did not abuse its
discretion by declining to order that the dispute be arbitrated.  We overrule appellant=s second and third issues. 

VI.  Conclusion

Having
overruled appellant=s four
issues, we affirm the trial court=s summary judgment in favor of appellee.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL F:    LIVINGSTON, HOLMAN, and GARDNER, JJ.

 

DELIVERED: August 31, 2007

 











[1]After
reviewing the record, we cannot determine the exact date that appellant mailed
her responses to the requests or whether the trial court considered the
admissions as summary judgment evidence. 
However, appellant concedes that she did not answer the second request
for admissions in a timely manner and that those admissions were deemed
admitted.





[2]The
trial court did not state its reasons for granting the summary judgment
motions.  





[3]Appellee
sued appellant for breach of contract and, alternatively, unjust enrichment.





[4]We
recognize the Texas Supreme Court=s holding in Wheeler v.
Green, which reversed a summary judgment that was based on deemed
admissions that a pro se plaintiff had failed to timely answer.  157 S.W.3d 439, 442-44 (Tex. 2005).  However, Wheeler is
distinguishable.  In Wheeler, the
pro se litigant, who was fighting to keep joint managing conservatorship of her
daughter, was unaware of the Amailbox rule@ and
missed her deadline for filing answers to the father=s
requests for admissions by two days even though she attempted to meet the
deadline.  Id. at 441.  Consequently, the trial court granted summary
judgment in favor of the father and terminated Wheeler=s
joint managing conservatorship.  Id.  The Texas Supreme Court reversed the
decision, holding that trial courts have broad discretion to permit or deny withdrawal
of deemed admissions, but cannot do so arbitrarily, unreasonably, or without
reference to guiding rules or principles. 
Id. at 443.  Further,
courts should allow deemed admissions to be withdrawn if a party can show (1)
good cause and (2) no undue prejudice.  Id.
at 442.  Here, appellant conceded that
she did not respond to the admissions, and there is nothing in the record to
indicate that she asked to withdraw or amend them, so Wheeler is
inapplicable.  See id.  

In any event, while a lack of understanding of pretrial procedure by a
pro se litigant might be proof of good cause to withdraw deemed admissions, a
conscious indifference is not.  Id. at
443.  Here, unlike the pro se litigant in
Wheeler, appellant complied with the discovery rules by responding
timely to the first request for admissions, but she showed no good cause for
failing to even attempt to respond on time to the second request for
admissions.  See id.    





[5]Appellant=s
first and fourth issues do not address her jurisdictional argument.  Instead, her second and third issues do.  We analyze the applicable law here, however,
to determine whether the contract between appellant and appellee was valid.





[6]The standard for determining waiver
of the right to arbitrate is the same under the Texas General Arbitration Act
and the Federal Arbitration Act. Southwind Group, Inc. v. Landwehr, 188
S.W.3d 730, 735 (Tex. App.CEastland 2006, no pet.); Brown v. Anderson, 102
S.W.3d 245, 250 (Tex. App.CBeaumont 2003, pet. denied).