**James G. NEAL, Plaintiff–Appellee,**

v.

**HARDEE'S FOOD SYSTEMS, INC., Defendant–Appellant.**

No. 90-2205.

United States Court of Appeals, Fifth Circuit.

Nov. 29, 1990.

Rehearing Denied Dec. 26, 1990.

---

John F. Dienelt, Ellen R. Lokker, Reed, Smith, Show & McClay, Washington, D.C., for defendant-appellant.

Savannah Robinson, Whittle & Watts, Nancy M. Simonson, J.A. Canales, Canales & Simonson, Corpus Christi, Tex., for plaintiff-appellee.

Before POLITZ, JERRE S. WILLIAMS, and SMITH, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Pursuant to 9 U.S.C. § 15, appellant Hardee's Food Systems, Inc. (hereinafter "Hardee's") asks us to review the district court's denial of its Motion to Stay Proceedings Pending Arbitration. Because we

find that the motion should have been granted, we reverse the order of the district court.

## I. *Background*

In December 1984, appellee James G. Neal entered the fast food business by acquiring six Hardee's franchises in Corpus Christi, Texas.[1] Two separate types of agreements govern the bulk of the transaction between Hardee's and Neal. In an Agreement of Sale and Purchase (hereinafter "Purchase Agreement") dated December 19, 1984, Neal agreed to buy and Hardee's agreed to sell certain buildings, land, and personal property comprising six Hardee's stores in the Corpus Christi area.[2] The Purchase Agreement expressly provided that the purchaser would contemporaneously enter into License Agreements with Hardee's.

On December 22, 1984, the parties executed individual License Agreements for each of the six Hardee's stores.[3] These License Agreements cover all aspects of the licensor-licensee relationship. Most significantly, the agreements authorize Neal to operate the stores purchased as Hardee's restaurants by using Hardee's trademarks, trade name, and system of operations. The License Agreements also contain a broad arbitration clause:

> Except as expressly provided to the contrary in this Agreement, the parties agree that any and all disputes between them, and any claim by either party that cannot be amicably settled, shall be determined solely and exclusively by arbitration under the Federal Arbitration Act, as amended....

The scope and coverage of this arbitration clause is the subject of the dispute.

---

**1.** Although five partners joined Neal in this venture, he was the only plaintiff in the case below, so all references to the transaction will speak of a single licensee.

**2.** Hardee's signed the document on December 19. Neal did not execute the document until December 20.

**3.** Each License Agreement refers to a specific location. The covenants and duties contained in each of the separate agreements are substantially similar.

Neal did not profit from the operation of the Hardee's franchises as he had anticipated. In April 1988, he filed suit in the State District Court in Nueces County, Texas, alleging that Hardee's defrauded him into buying the businesses and becoming a franchisee by false representations about the profitability of the restaurants. His claim alleges violations of the Texas Deceptive Trade Practices Act, breach of contract, fraud, and breach of the covenant of good faith and fair dealing.

Hardee's removed the action to the United States District Court for the Southern District of Texas, Corpus Christi Division, on the basis of diversity jurisdiction. Hardee's then sought to stay the court proceedings, relying on the arbitration clause contained in the License Agreements.[4] The district court assigned the case to a Magistrate, who made findings and recommended that the matter be stayed pending arbitration. After conducting a *de novo* review of the Magistrate's findings and conclusions, the district court adopted the findings, but refused to stay the proceedings. Hardee's seeks review of the refusal of the stay.

## II. *Agreement to Arbitrate*

■ The question presented by this appeal is whether the broad arbitration clause contained in the License Agreements entered into between the parties applies to the claims contained in Neal's petition pending in the district court. If the claims are covered by the arbitration clause, we must order the district court to stay its proceedings. If the claims are not covered, the cause of action can proceed in the court. We have jurisdiction to review the district court's order under 9 U.S.C. § 15.

---

**4.** Alternatively, Hardee's sought dismissal of the action, claiming that Neal lacked capacity to bring the suit since he had filed for bankruptcy and the bankruptcy trustee had not abandoned the cause of action. After Neal's attorneys explained that they were pursuing the action at the request of the bankruptcy trustee, the district court denied Hardee's Motion to Dismiss. Hardee's does not appeal that portion of the district court's order.

Effective November 19, 1988, that section amended the Federal Arbitration Act to permit interlocutory appeals of orders favoring litigation over arbitration. *United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir.1990); *Turboff v. Merrill Lynch, Pierce, Fenner & Smith*, 867 F.2d 1518, 1520 (5th Cir. 1989).

■ Hardee's wants to resolve this dispute through arbitration, and refers us to the arbitration clause in the License Agreements. Neal wants to maintain his claims in court and relies on the absence of an arbitration clause in the Purchase Agreement. He argues that his claims do not involve the subject matter of the License Agreement, but rather are limited to acts taken in conjunction with the Purchase Agreement. Resolving this dispute is a matter of contract interpretation and therefore is subject to *de novo* review by this court. *See Huggs, Inc. v. LPC Energy, Inc.*, 889 F.2d 649, 651 (5th Cir.1989); *Burns v. Louisiana Land & Exploration Co.*, 870 F.2d 1016, 1018 (5th Cir.1989).

■ A party cannot be compelled to submit a dispute to arbitration unless there has been a contractual agreement to do so. *Matter of Talbott Big Foot, Inc.*, 887 F.2d 611, 614 (5th Cir.1989). In addressing questions of arbitrability, we must, however, keep in mind the strong federal policy favoring arbitration. *See, e.g., Volt Info. Sciences v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989); *Life of America Ins. Co. v. Aetna Life Ins. Co.*, 744 F.2d 409, 412 (5th Cir.1984). We resolve doubts concerning the scope of coverage of an arbitration clause in a contract in favor of arbitration. *AT & T Technologies, Inc. v. Communication Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)); *Mar–Len of La., Inc. v. Parsons–Gilbane*, 773 F.2d 633, 635 (5th Cir.1985). We have held that arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Commerce Park at DFW Freeport v. Mardian Const. Co.*, 729 F.2d 334, 338 (5th Cir.1984); *Wick v. Atlantic Marine*, 605 F.2d 166, 168 (5th Cir.1979).

■ Neal relies upon the absence of an arbitration clause in the Purchase Agreement. His contention asks us to view each of the agreements in isolation, ignoring the obvious purpose of the individual transactions. But Hardee's and Neal contracted to transfer rights to a business. Although the parties used multiple agreements to delineate their relationship, each agreement was dependent upon the entire transaction. It existed to further the single goal of making Neal a Hardee's franchisee. The individual agreements were integral and interrelated parts of the one deal.

■ The documents evidence the parties' recognition of the interdependence of the Purchase and License Agreements. The Purchase Agreement stated that Neal would operate the properties as Hardee's restaurants. The agreement also acknowledged that the parties would contemporaneously enter into License Agreements for the six stores. Under general principles of contract law, separate agreements executed contemporaneously by the same parties, for the same purposes, and as part of the same transaction, are to be construed together. *See Modern American Mort. Corp. v. Skyline Park*, 614 F.2d 1009, 1012 (5th Cir.1980); *In re Olm Associates*, 98 B.R. 271, 274 (N.D.Tex.1989); *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex.1984).[5]

---

5. Federal law governs the interpretation and validity of an arbitration clause subject to the Federal Arbitration Act. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1062 (5th Cir.1990). The federal law applicable to this decision simply comprises generally accepted principles of contract law. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (3d Cir.1987); *Valero Refining Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir.1987). We

The keystone of the deal between the parties was the transfer of franchise rights pursuant to the License Agreements. Without the franchise rights, the parties concede that they would not have executed the Purchase Agreement. The parties chose to include a broad arbitration clause in the License Agreements. Recognizing that the License Agreements were the heart of their deal, it is logical that the parties would have expressed their intent to arbitrate all of their disputes in a provision in those agreements. We hold that when the parties included a broad arbitration clause in the essential License Agreements covering "any and all disputes," they intended the clause to reach all aspects of the parties' relationship including the purchase of the physical properties.

■ In any event, Neal must fail in his claim that the licensing agreements are not involved because he is suing only under the Purchase Agreement. Neal argues that his claim pertains only to fraudulent misrepresentations made by Hardee's to convince him to enter into the Purchase Agreement. His full complaint obviously is that the franchises he bought from Hardee's were not as profitable as company agents represented them to be. His claims of fraud, deception, bad practice, breach of contract, and breach of good faith are not based upon the mere purchase of the physical property. The clear import of his claim against Hardee's is that Neal agreed to become a franchisee of the Hardee's restaurants in reliance on fraudulent misrepresentations made by Hardee's agents as to their profitability as franchises. The franchises were created by the License Agreements not just by the purchasing of the property. Any and all disputes arising under those agreements are subject to arbitration.

Construing the agreements before us we conclude inescapably that the district court look to state law to shape these general principles. *See Flink v. Carlson,* 856 F.2d 44, 46 n. 2 (8th Cir.1988); *Johnson Controls, Inc. v. City of Cedar Rapids, Iowa,* 713 F.2d 370, 373 (8th Cir. 1984).

6. The Magistrate recommended granting Hardee's Motion to Stay on February 27, 1989. While the parties awaited review of that recommendation by the district court, a hearing was held before the American Arbitration Association. Neal was advised of the hearing dates, but did not participate. The Association issued its decision in Hardee's favor on March 10, 1989. The district court did not issue its order denying Hardee's Motion to Stay Proceedings until February 13, 1990.

erred when it found that the parties did not agree to arbitrate the type of claims brought by Neal.

### III. *Conclusion*

With today's opinion we decide only that the district court erred by refusing to grant Hardee's Motion to Stay Proceedings. We are aware that during the pendency of this action an arbitration hearing was held under the auspices of the American Arbitration Association.[6] Neal was given notice of the hearing, but chose not to participate. The arbitration panel rendered a decision in favor of Hardee's. On remand the district court must decide the extent to which the decision by the arbitration panel is binding on the parties.

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.