# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-IA-01463-SCT

*JERRY M. SULLIVAN, JR.*

*v.*

*WILLIAM M. MOUNGER, II, E. B. MARTIN, JR.*
*AND TRITEL, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/14/2002 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DANA E. KELLY |
| | WILLIAM I. GAULT, JR. |
| | C. YORK CRAIG |
| | RICKY G. LUKE |
| ATTORNEYS FOR APPELLEES: | GLENN GATES TAYLOR |
| | DONALD JAMES BLACKWOOD, JR. |
| | PHILLIP SAMUEL SYKES |
| | CONSTANCE SLAUGHTER HARVEY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED AND REMANDED - 07/01/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     This is an interlocutory appeal of a circuit court order requiring Jerry M. Sullivan, Jr. to arbitrate

his claims against William M. Mounger, II, E. B. Martin, Jr., and Tritel, Inc. We affirm.

## BACKGROUND FACTS

¶2.     Mounger, Martin and Sullivan were founders of various entities that ultimately became Tritel, which

built and operated a wireless telephone network. On May 20, 1998, Mounger, Martin, Sullivan, AT&T

Wireless Services, Inc. and other investors executed a Securities Purchase Agreement which established

the framework culminating in the transfer of Personal Communications System ("PCS") licenses into Tritel and the capitalization and funding of the company necessary to construct and operate a PCS system. Mounger, Martin and Sullivan received ownership interests in, and on January 7, 1999 entered employment agreements with, Tritel. A disagreement arose and on May 14, 1999, Sullivan was relieved of his responsibilities for the construction of Tritel's wireless network. Within a few weeks, Sullivan and Tritel each hired attorneys and agreed to mediate their disputes.

¶3. During late May, June and part of July, 1999, the parties and their attorneys, working with the mediator, negotiated a global settlement agreement which allegedly resolved Sullivan's employment status with Tritel, his ownership of stock in the company, and various other issues.

¶4. On July 21, 1999, the parties entered into an agreement titled "Summary Term Sheet Jerry M. Sullivan Agreement" which contained the principal terms of their agreement, including an arbitration provision. After the execution of this document, the respective attorneys worked to prepare the "Transaction Documents" needed to fully set out the terms of their agreement. The documentation included the following:

1) Stock Purchase Agreement (Tritel);

2) Membership Purchase Agreement (Tritel Management);

3) Stock Purchase Agreement (MSM);

4) Second Amendment to Stockholders' Agreement;

5) First Amendment to Management Agreement;

6) Amended and Restated Employment Agreement; and

7) Mutual Release and Termination Agreement.

¶5. These documents are consistently referred to collectively, throughout the documentation, as the "Transaction Documents."

¶6. Under the terms of the Amended and Restated Employment Agreement, Sullivan would receive an annual salary of $225,000, and an annual bonus of $112,500.00, for three years. He would also receive an annual $100,000 business expenditure/expense budget, for two years. These amounts, which exceeded $1.2 million, were to be paid to Sullivan, whether or not he performed any work.

¶7. Under the terms of the Stock Purchase Agreement (Tritel), Tritel repurchased 3,186.92 of Sullivan's 7,686.92 shares of common stock for one cent ($.01) per share, $31.90, and Sullivan's three shares of voting preference stock, for the total sum of $10.00.

¶8. On November 4, 1999, Sullivan signed the Transaction Documents. Fifteen days later, Tritel announced that it intended an initial public offering of its stock, and on December 13, 1999, Tritel offered its stock to the public for $18.00 per share.

¶9. On December 3, 2001, Sullivan filed suit against Mounger, Martin and Tritel, alleging that they fraudulently induced him to enter into the Stock Purchase Agreement (Tritel), and the Mutual Release and Termination Agreement. The defendants responded by filing a Motion to Dismiss or Stay Pending Binding Arbitration and Other Relief.

¶10. On May 14, 2002, the trial court entered its order granting defendants' motion and ordering Sullivan to submit his claims to binding arbitration before the American Arbitration Association ("AAA"). Sullivan responded by filing a petition for interlocutory appeal. The trial court entered its order granting certification for interlocutory appeal, and the petition requesting an interlocutory appeal was then filed here.

¶11. While the interlocutory appeal was pending before this Court, the parties proceeded to conduct discovery for the arbitration. Sullivan did not request a stay of the arbitration proceedings, and his claims were heard before a panel of three AAA arbitrators. The arbitration concluded on January 10, 2003, and the panel of arbitrators took the matter under advisement.

¶12. On February 8, 2003, while the arbitration was under advisement, this Court granted Sullivan's Petition for Interlocutory Appeal. *See* M.R.A.P. 5. Thereafter, on March 21, 2003, the panel of arbitrators rendered its decision, finding in favor of defendants, but awarding Sullivan certain expenses he incurred during the arbitration proceeding.

¶13. Sullivan now seeks to have us hold the arbitration void and allow him to proceed to trial in the circuit court. This we decline to do.

## STANDARD OF REVIEW

¶14. This Court conducts de novo review on both motions to dismiss and motions to compel arbitration. ***East Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (Miss. 2002). `"In determining the validity of a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-pronged inquiry. The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." ***Id.*** The second prong considers "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." ***Id.***

## DISCUSSION

¶15. The issue on interlocutory appeal is whether the circuit court erred by compelling arbitration based on an arbitration provision contained in one of the Transaction Documents which is not complained of in Sullivan's lawsuit.

4

¶16. In its order granting certification for interlocutory appeal, the trial court certified the question of law: "Whether the arbitration provision relied upon by the defendants is enforceable and applicable to the claims of Plaintiff." To answer the question, we turn to the test followed in *East Ford*.

*Did the parties enter a valid arbitration agreement?*

¶17. Sullivan's Complaint is based on the Stock Purchase Agreement (Tritel) and the Mutual Release and Termination Agreement, neither of which contained an arbitration provision. However, all parties agree that both documents were part of the Transaction Documents.

¶18. The arbitration provision at issue was included in the Amended and Restated Employment Agreement. The provision, entitled "Resolution of Disputes," states in pertinent part:

> All disputes, controversies and claims arising in connection with this Agreement that are not settled by agreement between the parties shall be finally settled under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in effect from time to time. . . . The award of the arbitrator shall be final and binding and judgment thereon may be entered in any court having jurisdiction. . . .

¶19. Sullivan argues that the Amended and Restated Employment Agreement clearly and unambiguously provides that only disputes arising in connection therewith are subject to arbitration. Sullivan claims that disputes arising under the Stock Purchase Agreement (Tritel) and the Mutual Release and Termination Agreement are not subject to the arbitration provision.

¶20. Sullivan relies on *Carro Rivera v. Parade of Toys, Inc.*, 950 F. Supp. 449 (D. P.R. 1996), in support of his argument. In *Carro*, the Plaintiff sued for breach of a Distributor Agreement, containing an arbitration clause which limited it application to disputes arising out of "this Purchase Order". The court held that the clause did not apply to the Distributor Agreement and stated:

> Although the arbitration clause is contained in the Distributor Agreement, it appears to refer to disputes arising under a separate document–signed on the same day as the Distributor Agreement–entitled "Product Order Form". . . . The Court finds that the arbitration

5

clause's reference to "this Purchase Order" reflects an agreement to arbitrate disputes "arising under" the Product Order Form, no the Distributor Agreement.

*Id*. at 452. The court further stated that "[s]ince these claims do not 'arise under' the Purchase Order, they are not subject to arbitration." *Id.* at 453. Similarly, Sullivan asserts that since his claims do not arise under the Amended and Restated Employment Agreement, they are not subject to arbitration.

¶21. Sullivan also argues that the term "Transaction Documents" is given a specific definition and if the defendants intended to arbitrate disputes arising under the Transaction Documents, they could have easily drafted the arbitration provision to include all disputes in connection with this Agreement *and the Transaction Documents.*

¶22. Defendants, on the other hand, argue that the plain language of the agreements establishes that the parties intended and agreed to submit to arbitration any and all disputes arising under any of the Transaction Documents. Defendants point out that an "Integrated Transaction" provision was included in some of the "Transaction Documents," including the Mutual Release and Termination Agreement, which states:

> The provisions of this Agreement are an integral part of, and are necessary consideration for, the Transaction Documents and the settlement of existing disputes between and among the parties. Any breach of, or default under, this Agreement or any of the Transaction Documents shall constitute a breach of, and a default under, each of this Agreement and the Transaction Documents.

¶23. An "Entire Agreement and Amendment" provision was also included in some of the "Transaction Documents," including the Stock Purchase Agreement (Tritel), which states:

> This Agreement and the Transaction Documents set forth all, and supersede and replace all prior covenants, promises, agreements, conditions and understandings between the parties concerning the transactions contemplated hereby, and there are no oral or written, express or implied, covenants, promises agreements, conditions or understandings, between and among the parties except as contained in this Agreement and the Transaction Documents.

6

¶24.    Defendants  assert that the Integrated Transaction provision and the Entire Agreement and Amendment provision have the legal effect of making the terms of each of the Transaction Documents "an integral part of" and integrated into all of the Transaction Documents, producing one global settlement agreement.

¶25.    Sullivan concedes that the Amended and Restated Employment Agreement contains the arbitration provision, and he further concedes that some of the documents do contain an integration provision, but he denies that the provision integrated the arbitration provision into all the Transaction Documents.

*Is the parties' dispute within the scope of the arbitration agreement?*

¶26.    The Stock Purchase Agreement (Tritel) entered into between Sullivan and Tritel does not contain the Integrated Transaction provision but the Mutual Release and Termination Agreement entered into between Sullivan, Tritel and other "undersigned parties" does contain said provision.

¶27.    Defendants cite ***Russell v. Performance Toyota, Inc.***, 826 So. 2d 719 (Miss. 2002), in support of their argument that the arbitration provision was an integral part of and integrated into the other Transaction Documents.  In ***Russell***, there were two contracts - a Retail Buyer's Order and the Purchaser's Agreement Concerning Trade In.  The Retail Buyer's Order contained an arbitration clause. Russell argued that "because the 'Purchaser's Agreement Concerning Trade In' does not contain an arbitration clause, any claims that involve the trade-in agreement are not subject to arbitration." ***Id.*** at 723. The Retail Buyer's Order specifically stated: "The attached Purchaser's Agreement Concerning Trade In hereby is incorporated into this contract." ***Id.***  This Court affirmed the trial court's referral of the case to arbitration.

¶28.    Defendants also cite ***Personal Security & Safety Systems, Inc. v. Motorola Inc.***, 297 F.3d 388 (5th Cir. 2002) and ***Neal v. Hardee's Food Systems, Inc.***, 918 F.2d 34 (5th Cir. 1990) in

7

support of their argument. In ***Personal Security & Safety Systems, Inc.***, PSSI and Motorola executed three agreements in connection with their investment: a Stock Purchase Agreement, a Shareholders Agreement and a Product Development and License Agreement. The Product Development and License Agreement contained a broad arbitration clause. The court held that "the licensing agreement's arbitration provision governs claims arising out of the stock purchase agreement because the agreements were executed together as part of the same overall transaction and therefore are properly construed together." ***Personal Security & Safety Systems, Inc.*** 297 F.3d at 390.

¶29.    In ***Neal***, Hardee's and Neal entered into a Purchase Agreement which expressly provided that Neal would contemporaneously enter into License Agreements with Hardee's. ***Neal***, 918 F.2d at 36. The License Agreements contained a broad arbitration clause. ***Id.*** Neal filed a complaint against Hardee's for claims arising under the Purchase Agreement, which did not contain an arbitration clause. ***Id.*** The court, however, held that "[a]lthough the parties used multiple agreements to delineate their relationship, each agreement was dependant upon the entire transaction. . . . The individual agreements were integral and interrelated parts of the one deal." ***Id.***

¶30.    Here, both the Amended and Restated Employment Agreement which contained the arbitration provision, and the Stock Purchase Agreement (Tritel), were signed by Sullivan and Tritel, Inc.; and the Mutual Release and Termination Agreement was signed by Sullivan, Tritel and  other parties, which included Mounger and Martin among other individuals and entities.  Therefore, Sullivan and Tritel were parties to all three documents.

¶31.    The Integrated Transaction provision states in part, "The provisions of this Agreement are an integral part of, and are *necessary consideration* for, the Transaction Documents and the settlement of existing disputes between and among the parties." (emphasis added).  As was the case in ***Neal***, there

8

is no question in the case sub judice that all the individual documents were integral and interrelated parts of a single, global settlement transaction.

¶32. Sullivan relies on *expressio unius est exclusio alterius*, a rule of contract interpretation which is defined as "expression of one thing is the exclusion of another." ***Miss. Milk Comm'n v. Winn-Dixie La., Inc.***, 235 So. 2d 684, 689 (Miss. 1970). Sullivan argues that when the parties expressly included an arbitration provision in the Amended and Restated Employment Agreement, they clearly excluded arbitration of claims arising in connection with other agreements. However, in ***Neal***, the court stated: "Under general principles of contract law, separate agreements executed contemporaneously by the *same parties*, for the same purposes, and as part of the same transaction, are to be construed together." ***Neal***, 918 F.2d at 37 (emphasis added). In other words, when separate documents are executed at the same time, by the same parties, as part of the same transaction, they may be construed as one instrument.

¶33. Furthermore, it is clear that Sullivan and Tritel intended that any and all disputes, controversies and claims arising in connection with the Amended and Restated Employment Agreement would be arbitrated, and the law is clear that when documents are "executed contemporaneously by the same parties, for the same purposes, and as part of the same transaction" they are to be construed together.

¶34. The case sub judice is an action filed by Sullivan against Mounger, Martin and Tritel. The Amended and Restated Employment Agreement, which contained the arbitration provision, was entered into between Sullivan and Tritel and the Mutual Release and Termination Agreement was entered into between Sullivan, Tritel and other undersigned parties, which included Mounger and Martin. Sullivan signed the Amended and Restated Employment Agreement and agreed to the arbitration provision contained therein.

9

¶35. Sullivan's claims arising under the Stock Purchase Agreement and the Mutual Release and Termination Agreement fall within the arbitration provision contained in the Amended and Restated Employment Agreement, and the claims were arbitrable.

## CONCLUSION

¶36. For the foregoing reasons, and pursuant to the above cited case law and authorities, this Court finds that Sullivan's claims were subject to the agreement to arbitrate. The trial court's order granting the defendants' motion to compel arbitration is affirmed, and this case is remanded to the trial court for any necessary further proceedings consistent with this opinion.

¶37. **AFFIRMED AND REMANDED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. WALLER, P.J., AND DIAZ, J., NOT PARTICIPATING.**