# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02274-SCT

*RUDOLPH D. SULLIVAN, JR.*

*v.*

*PROTEX WEATHERPROOFING, INC. AND ATX TELECOM, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/14/2003 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GREGORY MOREAU JOHNSTON |
| ATTORNEYS FOR APPELLEES: | PATRICK RYAN BECKETT |
| | PAULA GRAVES ARDELEAN |
| | EMERSON BARNEY ROBINSON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 03/31/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1. This is a dispute over an arbitration clause in an employment agreement which was part of a global transaction to sell the assets of a business. The question presented is whether that arbitration clause may be used to force arbitration of a dispute over a different agreement which had no arbitration clause.

## FACTUAL BACKGROUND

¶2. Rudolph D. Sullivan, Jr., and Mike Scrimpshire invented, developed, and eventually patented a device to weatherproof joints in coaxial cable. They manufactured and sold the device through their company, Protex, Inc., which they eventually decided to sell. After

negotiations with ATX, a Canadian telecommunications company, they reached an agreement which culminated in a July, 2001 closing of the sale.

¶3.    On July 1, 2001, the various parties signed the documents necessary to close the transaction, including an Asset Purchase Agreement and employment contracts for both Sullivan and Scrimpshire.  The parties to the Asset Purchase Agreement were:

Purchaser:    PROTEX WEATHERPROOFING, INC., a wholly owned subsidiary of ATX which was formed for the purpose of taking ownership of the assets being purchased and continuing the business of Protex;

ATX:    ATX TELECOM, INC., a Canadian corporation which provided the funds to purchase the assets;

Vendor:    PROTEX, INC., a Mississippi corporation which owned most of the assets being sold;

Principals:    JAMES MICHAEL SCRIMPSHIRE and RUDOLPH D. SULLIVAN, JR., owners of Protex, Inc., and some of the intellectual property being sold.

¶4.    The parties to Sullivan's employment contract (the "Employment Contract") were Sullivan and Protex Weatherproofing.  The Employment Contract provided that he would work four and a half years for Protex Weatherproofing for a minimum salary of $70,000 for the year 2001, with salary increases each year based on the financial performance of Protex Weatherproofing. Section 4.03 of the Employment Contract provided:

Notwithstanding anything contained in this Agreement, in the event that the employment relationship is terminated without Cause, the Employee shall be entitled to receive a continuation of his remuneration for the unexpired term of this Agreement or to receive a lump sum payment in lieu thereof

2

¶5. After the closing, Sullivan became vice president and a director of Protex Weatherproofing and worked for approximately one year until September 30, 2002, when he was terminated. Claiming his termination was without cause, Sullivan demanded the lump sum payment provided in section 4.03 of the Employment Contract. When Protex Weatherproofing refused to pay, he filed suit against Protex Weatherproofing and ATX.

¶6. On January 22, 2003, ATX and Protex Weatherproofing filed answers. Both affirmatively alleged that Sullivan's claims were "subject to mandatory and binding arbitration." Additionally, the defendants filed a joint motion to compel arbitration.

¶7. The parties extensively briefed and argued their respective positions to the learned trial judge who, on October 14, 2003, entered an order compelling arbitration and dismissing the complaint without prejudice. Aggrieved, Sullivan appeals.

## ANALYSIS

¶8. Sullivan raises the following issues on appeal:

I. Arbitration should not be compelled in this matter as plaintiff has made claims against ATX that are independent of the "Employment Contract."

II. Arbitration should not be compelled in this matter, as ATX is a nonsignatory to the "Employment Contract."

III. ATX should not be allowed to enjoy the protection of the arbitration provision of the "Employment Contract" while claiming no liability to plaintiff under the Employment Contract.

¶9. We review de novo the grant or denial of a petition to compel arbitration. *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002).

3

¶10. First, we find no challenge in this appeal to the dismissal of Protex Weatherproofing. Sullivan's assignments of error relate only to the application of the Arbitration Provision to ATX, who was not a signatory to the Employment Contract. Thus, we do not address the dismissal of Protex Weatherproofing and turn to Sullivan's claims concerning ATX.

¶11. Sullivan says arbitration of his claims against ATX should not be compelled because he made claims against ATX under the Asset Purchase Agreement, which had no arbitration provision. He argues that these claims are "independent" of the Employment Contract. Stated differently, Sullivan claims ATX should not be allowed to use the arbitration provision in the Employment Contract to compel arbitration of disputes involving the Asset Purchase Agreement.

¶12. The Employment Contract, to which Sullivan is a party, contains an arbitration provision which includes the following language: "[Sullivan] agrees that **any dispute** or controversy arising out of, **relating to, or in connection with this Agreement**, or the interpretation, validity, construction, **performance, breach**, or termination thereof, shall be settled by binding arbitration." (emphasis added). Sullivan does not dispute that he is bound by this language. He claims that the language has nothing to do with his claim under the Asset Purchase Agreement.

*Claims under the Asset Purchase Agreement*

¶13. Sullivan's complaint alleges that, "From the inception . . . the defendants did not provide adequate funding, marketing support, or other resources" necessary for Protex Weatherproofing to succeed. Sullivan further claims the formation of Protex Weatherproofing was a sham, that ATX entered the Asset Purchase Agreement solely for the

4

purpose of obtaining the patents, and that ATX never had any intention of making Protex Weatherproofing a viable company.

¶14.    Sullivan's complaint alleges four causes of action against Protex Weatherproofing and ATX:   fraud, breach of contract, gross breach of duty of good faith and fair dealing and misrepresentation.   Sullivan bases each of these causes of action on his claim that he was not paid what he was due under the Employment Contract.

¶15.    COUNT I. - FRAUD, alleges he was fraudulently induced into signing the Asset Purchase Agreement and selling his patents "in return for false promises of consideration, including the [Employment] Contract."

¶16.    COUNT II. - BREACH OF CONTRACT, alleges that defendants[1] "are liable to [Sullivan] for wrongfully and tortiously breaching their [Employment] Contract with Plaintiff in failing to continue the compensation or providing a lump sum payment as required under the Contract."   The claim for breach of contract does not allege any breach of the Asset Purchase Agreement.

¶17.    COUNT III. - GROSS BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING, alleges the defendants breached their duty by failure to provide "the consideration promised to [Sullivan] under the Asset Purchase Agreement and [Employment] Contract."

¶18.    COUNT V. (sic) - MISREPRESENTATION, alleges the defendants misrepresented "the consideration and support it would provide to [Sullivan]."

---

[1]

Sullivan sued both Protex Weatherproofing and ATX for breach of his Employment Contract. Sullivan claims ATX is the alter ego of Protex Weatherproofing.

5

¶19.    Sullivan cannot deny that his entire complaint, and each cause of action, involves a "dispute or controversy arising out of, relating to, or in connection with [the Employment Contract], or the interpretation, validity, construction, performance, breach, or termination thereof."  Nor can Sullivan deny that he has sued ATX for breach of the Employment Contract. Consequently, Sullivan bound himself to arbitrate the claims.

¶20.    Sullivan must arbitrate his claims for a second reason.  The Asset Purchase Agreement and the Employment Contract were part of a global transaction.  In *Sullivan v. Mounger*, 882 So. 2d 129 (Miss. 2004), an employment agreement containing an arbitration provision and other agreements not containing arbitration provisions, were executed as part of a global transaction.  When a dispute arose under a document which did not contain an arbitration provision, we held that "when separate documents are executed at the same time, by the same parties, as part of the same transaction, they may be construed as one instrument."  *Id.* at 135.

¶21.    In *Mounger*, we cited with approval *Neal v. Hardee's Food Systems, Inc*., 918 F.2d 34 (5th Cir. 1990), and *Personal Security & Safety Systems, Inc. v. Motorola Inc*., 297 F. 3d 388 (5th Cir. 2002).  The *Neal* court held:

> Under general principles of contract law, separate agreements executed contemporaneously by the *same parties* for the same purposes and as part of the same transaction are to be construed together.  *Neal*, 918 F.2d at 37 (emphasis added).

*Mounger*, 882 So. 2d at 135.  The *Personal Security & Safety Systems, Inc.* court held:

> [T]he licensing agreement's arbitration provision governs claims arising out of the stock purchase agreement because the agreements were executed together as part of the same overall transaction and therefore are properly construed together. *Personal Security & Safety Systems, Inc*. 297 F. 3d at 390.

*Mounger*, 882 So. 2d at 134.

¶22. The separate opinion says *Mounger* is distinguishable because "in the case sub judice, the same parties did not sign each agreement." This is surprising for two reasons.

¶23. First, the same parties did not sign all the same documents in *Mounger*. One of the documents in issue was the Mutual Release and Termination Agreement which was "entered into between Sullivan, Tritel and other 'undersigned parties'" who were not signatories on the other documents. *Mounger*, 882 So. 2d at 133-34.

¶24. Second, for purposes of Sullivan's breach of contract claim, the separate opinion easily adopts Sullivan's position[2] that, pursuant to the "alter ego" doctrine, ATX and Protex Weatherproofing are the same parties. However, for purposes of denying the defendants' request to arbitrate, the separate opinion finds they are separate. This reasoning is bewildering; ATX is either the "alter ego" of Protex Weatherproofing, or it is not.

¶25. *Mounger* did not require, and we have never held, that in order for documents to be construed together, they must include a written provision which specifically recites that all documents are part of an integrated, or global, transaction.

¶26. In advocating this new requirement, the separate opinion relies heavily on the "Integrated Transaction" provision discussed in *Mounger*. However, this reliance is misplaced. This Court in *Mounger* specifically pointed out that the Stock Purchase Agreement, one of the

---

[2]In his complaint, Sullivan alleges ATX breached the Employment Contract, even though ATX did not sign it. This alter ego approach is confirmed in Sullivan's response to the motion to compel arbitration, in which Sullivan says, "It is admitted that Protex and ATX breached the employment contract with plaintiff." Finally, in his memorandum supporting his response to the motion to compel arbitration, Sullivan says, "It is also notable, that while Protex is the alter-ego of ATX."

documents sued upon by the plaintiff in *Mounger*, "[did] not contain the Integrated Transaction provision." *Mounger*, 882 So. 2d at 133.

*The global transaction*

¶27. It would be difficult to envision a transaction more "global" than the sale of assets in the case sub judice. The Employment Contract was specifically made "an integral part" of the Asset Purchase Agreement. Section 1.2 of the Asset Purchase Agreement states:

The following schedules shall be appended to this agreement and shall form an integral part thereof, namely:

* * *

Schedule 8.1(k) - Form of Employment Contract

¶28. Stated another way, without the Asset Purchase Agreement, there would have been no Employment Contract, and without the Employment Contract, there would have been no Asset Purchase Agreement. Both agreements were not only part of the same overall transaction (as in *Mounger*), but were by their very terms part of the same agreement. The Asset Purchase Agreement incorporated the Employment Contract and made it an integral part thereof. It would therefore seem clear that the terms of the Employment Contract became terms of the Asset Purchase Agreement. Interestingly, it is Sullivan himself who most forcefully makes this point in paragraph 6 of his complaint. He describes his Employment Contract as "further consideration for Plaintiff's patents." In his fraud claim, Sullivan says he was fraudulently induced into entering into the Asset Purchase Agreement and selling his patents "in return for false promises of consideration, including the [Employment] Contract, which it is now obvious the Defendants had no intention of honoring."

8

¶29.   It is also worth noting again that in the Complaint's only "Breach of Contract" count, Sullivan alleges that Defendants breached the Employment Contract.   No allegation is found therein that Defendants breached the Asset Purchase Agreement.

¶30.   The Employment Contract, which the parties specifically agreed was an "integral part" of the Asset Purchase Agreement, contained an arbitration provision.   Therefore, applying a familiar geometric theorem (A=B; B=C, therefore A=C),[3] the arbitration provision of the Employment Contract was also an "integral part" of the Asset Purchase Agreement.

¶31.   In reaching our decision today, we also considered the following:

   (1)   According to the specific terms of the Asset Purchase Agreement, execution of the Employment Contract by Sullivan was a *condition precedent* to the obligation of Sullivan, Protex Weatherproofing, and ATX to close the purchase.

   (2)   The Employment Contract was not only an exhibit to the Asset Purchase Agreement, but was specifically made an "integral part" of the Asset Purchase Agreement.

   (3)   The Employment Contract and the Asset Purchase Agreement were both dated July 1, 2001.

   (4)   In the Complaint, Sullivan characterizes his Employment Contract as part of the *consideration* for the Asset Purchase Agreement.

   (5)   Both Sullivan and Protex Weatherproofing, Inc., signed the Employment Contract, which contained the arbitration provision.

   (6)   Although ATX did not sign the Employment Contract, its name is included in the file path at the bottom of the document:

---

[3]Also stated as: Two things equal to the same thing are equal to each other.

9

(O:\Lawyers\JLD\ATX Telecom Inc\Protex\employment contract - rudy2.wpd).

(7) The Asset Purchase Agreement identifies Protex Weatherproofing Inc., as "a wholly-owned subsidiary of ATX, for the purpose of completing the transaction contemplated by the said letter of intent."

(8) The Asset Purchase Agreement says the "letter of intent" provided that this wholly-owned subsidiary of ATX was formed for the purpose of purchasing the assets of Protex.

¶32. Sullivan makes no credible claim that his dispute under the Employment Contract is not subject to arbitration. We hold that all of Sullivan's claims are subject to the arbitration provision in the Employment Contract.

## CONCLUSION

¶33. In summary, this case involves the sale of a business. The buyer required the seller to sign an employment contract. All the documents were executed on the same date. The purchase agreement incorporated the Employment Contract, and therefore its terms and provisions, as an "integral part" thereof. One of the terms of the integrated employment contract was an arbitration provision. Under any definition and analysis, this was a global transaction which must be controlled by our holding in *Mounger*. We therefore affirm the judgment of the Circuit Court of Rankin County.

¶34. **AFFIRMED.**

**SMITH, C.J., COBB, P.J.,AND CARLSON, J., CONCUR. RANDOLPH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WALLER, P.J., EASLEY AND GRAVES, JJ. DIAZ, J., NOT PARTICIPATING.**

**RANDOLPH, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶35. I concur in the plurality's result only as to requiring Sullivan to arbitrate claims concerning the Employment Contract ("Contract") as addressed below in Part I. However, as Sullivan alleged separate and independent claims concerning the Asset Purchase Agreement ("APA"), and there being no agreement to arbitrate contained therein, coupled with clear and unambiguous entire agreement clauses that 1) supercede all prior agreements, 2) prohibit any changes, and 3) fail to refer to or incorporate any other agreement in both the "contract" and "APA" agreements, these claims should not be subject to arbitration, as addressed below in Part II. Therefore, I am compelled to respectfully dissent to the plurality opinion compelling otherwise.

11

## I. Invoking the protection of the Contract's arbitration provision.

¶36. The parties argue that two different cases control the issue of whether a non-signatory can invoke the protection of a contract's arbitration provision. Sullivan urges this Court to follow its ruling in *Parkerson v. Smith*, 817 So. 2d 529 (Miss. 2002), where we ruled that a manufacturer of a mobile home could not compel arbitration based on a contract it had not signed. In *Parkerson*, the plaintiff filed suit against the seller of a mobile home and against the manufacture alleging failure to comply with express and implied warranties. *Id.* at 530. Defendants ATX and Protex Weatherproofing argue that *Parkerson* is not controlling because it dealt with arbitration issues within the context of the Federal Magnuson-Moss Warranty Act.

¶37. This Court ruled in *Parkerson* that,

> "The language of the Act clearly indicates that by enacting it, Congress intended to preserve for consumers the right to bring suit for breach of written or implied warranties. Therefore, the Magnuson-Moss Warranty Act has superceded the FAA in regard to breach of consumer warranties, and binding arbitration cannot be compelled in this case without contravening the purposes of the Act."

*Id*. at 534. However, the Court also stated that,

> "Champion [the manufacturer] was not a party to the contract containing the arbitration provision, and therefore may not invoke the arbitration clause to which it was never a party. To hold otherwise would allow a manufacturer which is not a signatory to an agreement to assert rights found in that agreement."

*Id.* at 535.

¶38. Defendants argue that this Court should adopt a Fifth Circuit decision expanding arbitration rights to a party who was a non-signatory to the arbitration agreement. *Grigson v. Creative Artists Agency*, *L.L.C.*, 210 F.3d 524 (5th Cir. 2000). At issue in *Grigson* was

whether a defendant who was a non-signatory to a distribution agreement could compel arbitration, when the complaint alleged tortious interference with the distribution agreement. *Id*. at 526. The Fifth Circuit ruled that the lower court was correct to grant the motion to compel based on equitable estoppel. *Id*.

¶39. Defendants urge this Court to adopt the principle of equitable estoppel as announced in *Grigson*. While I see the wisdom of equitable estoppel to compel arbitration in some cases, principles of equity should not grant arbitration rights to a third party who tortiously interferes with a contract, and should not allow them to avoid a court of law, and/or take away the injured party's constitutional right of a jury trial. U.S. Const. amend. VII. Although federal statutory authority favors arbitration, the U.S. Constitution does not. In absence of clear compliance with the FAA as evidenced by all parties clearly agreeing to abrogate a constitutional right (which they have the right to agree to do so), the Constitution demands adherence over a favored congressional act.

¶40. The application of equitable estoppel is fact driven and must be determined on a case-by-case basis. There are some instances, when a non-signatory to a contract can invoke the protection of an arbitration agreement. Since Sullivan's theory of holding ATX liable for the employment contract is predicated upon Protex Weatherproofing being the alter ego and wholly owned subsidiary of ATX, ATX may invoke the protection of the arbitration provision in the "Contract" claim.

¶41. Several courts have found that when there is a close relationship between a signatory to the agreement and a non-signatory, such as alter ego or parent/subsidiary, then the non-signatory has standing to compel arbitration. *See **Sunkist Soft Drinks, Inc. v. Sunkist***

13

*Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315 (4th Cir. 1988); *Interocean Ship. Co. v. Nat'l Ship. & Trading Corp.*, 523 F.2d 527, 539 (2d Cir. 1975).

¶42.　*Sunkist* is most closely related to the facts of the case sub judice.  In *Sunkist*, there was a dispute between a signatory to a contract and a non-signatory as to whether the non-signatory could compel arbitration.  10 F.3d at 755.  The non-signatory was Del-Monte Corporation, the parent corporation of SSD, the company which signed the agreement containing the arbitration provision.  *Id.*　The Court stated that, "Essentially, Sunkist contends that Del Monte, through its management and operation of SSD, caused SSD to violate various terms and provisions of the license agreement." *Id.* at 758.  Sullivan is relying on a similar argument to hold ATX liable for the "Contract" that Protex Weatherproofing executed.

¶43.　The Eleventh Circuit in *Sunkist* went on to say that, "when the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *Id.* at 757 (quoting *J.J. Ryan*, 863 F.2d at 320).

¶44.　The Second Circuit has explained:

> the mere fact that a party did not sign the arbitration agreement does not mean that it cannot be held bound by it.  Ordinary contract principles determine who is bound.  In an appropriate situation, the corporate veil may be pierced and a party may be held bound to arbitrate as the signatory's alter ego.

*Interocean Ship. Co.*, 523 F.2d at 539.

¶45.　If the plaintiff claims that the signatory and the non-signatory are essentially the same entity for purposes of holding the non-signatory liable for a breach of contract, then he cannot

at the same time take the contradictory position that the arbitration clause does not apply to the non-signatory. As Sullivan is asserting his claim against ATX as the alter ego of Protex Weatherproofing for breach of the "Contract," ATX should be allowed to compel arbitration with respect to the claims that arise out of the breach of the separate and distinct "Contract," which at the same time protects Protex Weatherproofing's right to compel arbitration as contained in the "Contract."

## II.    Independent claims not subject to arbitration.

¶46.    While the "Contract" did have an arbitration clause, the "APA" did not contain an agreement to arbitrate. Sullivan argues that he asserted claims that arise out of ATX's failure to fulfill its obligations under the "APA" and that those claims are independent of the "Contract" containing the arbitration clause. Sullivan argues that *AT&T Technologies, Inc. v. Commun. Workers of Am.*, 475 U.S. 643, 106 S.Ct. 1415, 89 L. Ed. 2d 648 (1986), is controlling wherein the Supreme Court said that, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Id.* at 648.

¶47.    ATX pleads that Sullivan's claims against ATX "undisputedly arise out of and directly relate to the purported breach of the Employment Agreement" and further pleads that "Sullivan's claims against ATX are fundamentally grounded in, intimately founded in and intertwined with the claims he is asserting against Protex Weatherproofing." However, this position is contrary to the express, unambiguous, and unequivocal language of the documents. Unfortunately, the plurality has chosen to ignore the clear expression contained within the contractual language and accepts ATX's post-dispute position.

15

¶48.    Sullivan alleges claims that are independent of the "Contract" containing the arbitration provision.    There were two contracts; one with an arbitration provision, and one without. Defendants should not be allowed to compel arbitration of "APA" claims when the APA does not contain an arbitration provision.    According to the United States Supreme Court, "Arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration."    *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).

¶49.    Defendants never sought, and Sullivan never agreed, to submit disputes concerning the "APA" to arbitration when the "APA" was drafted and signed.  The "Contract" and the "APA" were two distinct and separate documents.    Sullivan signed the "APA" before signing the "Contract."    The arbitration clause within the "Contract" did not refer to any other agreements made by the parties.  In order to take away the constitutional right of a jury trial, Sullivan must have knowingly, intelligently and voluntarily waived his constitutional rights.    *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185-86, 92 S. Ct. 775, 31 L. Ed. 2d 124 (1972).  Defendants did not require, nor did Sullivan knowingly, intelligently and voluntarily agree to submit disputes or controversies arising out of or relating to, or in connection with the "APA" to arbitration, as there was no arbitration clause within the "APA."

¶50.    The plurality finds *Sullivan v. Mounger*, 882 So. 2d 129 (Miss. 2004), controlling.  In *Mounger*, this Court affirmed a motion to compel arbitration to all claims relating a series of agreements.  *Id.*  However, *Mounger* is clearly distinguishable from the case sub judice.  In *Mounger*, the plaintiff's suit was based on a stock purchase agreement and a mutual release and

16

termination agreement, neither of which contained an arbitration provision. An arbitration clause was located in a separate employment agreement. However, time and again these three documents, along with four others, were repeatedly referred to as the "Transaction Documents." The distinguishable feature in *Mounger* was that the Mutual Release and Termination Agreement included a provision, which stated the following:

> The provisions of this agreement are an integral part of, and are necessary consideration for, the Transaction Documents and the settlement of existing disputes between and among parties. ***Any breach of, or default under, this Agreement or any of the <u>Transaction Documents</u> shall constitute a breach of, and a default under, each of this Agreement and the <u>Transaction Documents</u>.***

*Id.* at 133 (emphasis added). This provision clearly states that a breach of any one of the documents is to be construed as a breach of all the documents. No such provision was contained in the "APA" or "Contract," and the effect of the plurality opinion is to "write into" an unambiguous contract, such a clause to support ATX's post-dispute position.

¶51. Furthermore, the stock purchase agreement in *Mounger* included an entire agreement provision which included the following:

> ***This Agreement and the <u>Transaction Documents</u>*** set forth all, and supersede and replace all prior covenants, promises, agreements, conditions and understandings between the parties concerning the transactions contemplated hereby, and there are no oral or written, express or implied, covenants, promises agreements, conditions or understandings, between and among the parties except ***as contained in this Agreement and the <u>Transaction Documents</u>.***

Id. at 133 (emphases added). In the case sub judice, the "Contract" and "APA" each contained an entire agreement provision, and neither document referred to the other in its entire agreement clause.

17

¶52. The U.S. Court of Appeals for the First Circuit recently decided a case in which sellers of a company filed suit against the buyer of that company alleging breach of the asset purchase agreement and implied covenant of good faith. *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1 (1st Cir. 2004). The plaintiffs were owners of fitness stores that Bally acquired through an asset purchase agreement. *Id.* A separate employment contract engaged the plaintiffs to serve as area directors to manage and operate the centers. *Id.* at 4. Bally argued that the general arbitration clause in the employment agreement covered the claims that related to the asset purchase agreement, and the First Circuit disagreed. *Id.* at 9. The agreements in *Fit Tech* were intertwined, in that the employment agreements were referenced in and required by the purchase agreement; however, the First Circuit still ruled that the arbitration provision did not apply to the asset purchase agreement. *Id.* at 10. The court stated:

> [T]he two documents deal with different aspects of the sale (asset purchase and subsequent employment). No one can seriously argue that clauses can be plucked at random from one agreement and inserted into the other. The general arbitration clause appears only in the employment agreements and refers to disputes arising under or related to *that agreement*. Further. . . such a clause [is] omitted from the purchase agreement (although it would have been child's play to insert it there)."

*Id.* at 10 (emphasis in original). The sound reasoning found in *Fit Tech* should be applied to the case sub judice. Had Defendants intended to submit to arbitration any disputes arising out of the "APA," it would have been child's play to insert such a clause.

¶53. In the case of *In re Sino Swearingen Aircraft Corp.*, No. 05-03-01618-CV, 2004 WL 1193960 (Tex. Ct. App. June 1, 2004), the Texas Court of Appeals was presented with a case that involved two contracts; a distributorship agreement with an arbitration clause, and an

18

aircraft purchase agreement without. The dispute involved allegations of tortious conduct and wrongful termination relating to both agreements. *Id.* The defendants wanted to compel arbitration of all claims based on the distributorship agreement. *Id.* One of the key factors that resulted in affirmance of the trial court's decision to deny arbitration was that, "[T]he form Aircraft Purchase Agreement does not incorporate the Distributorship Agreement by reference." *Id.* at 2. The contracts in *Bell Aviation* were related because the contractual obligations contained in the Distributorship Agreements would be filled by using the Aircraft Purchase Agreements; however, the court disagreed with the appellant's contention that the claims were factually intertwined and should all be arbitrated. *Id.* at 3. Also, in *Bell Aviation*, the appellees argued that because there was an "entire agreement" provision in the Aircraft Purchase Agreement, that showed that they intended the Aircraft Purchase Agreement to be a separate contract not subject to the conditions and provisions of the Distributorship Agreement. *Id.* at 2.

¶54. Both the "Contract" and "APA" in the case sub judice contained an "entire agreement" provision also, which read in part:

> This Agreement embodies the entire agreement and understanding among the parties hereto and supersedes all prior agreements between such parties. Neither this Agreement nor any of the terms hereof may be changed, waived, discharged or terminated otherwise than by an instrument in writing signed by the party against which enforcement of such change, waiver, discharge or modification is sought.

¶55. To require parties to arbitrate disputes in the absence of a clear agreement to do so would "represent a dangerous encroachment upon the right to open access to courts," which is guaranteed by the U.S. Constitution. *In re Rose*, 82 S.W.3d 523, 524 (Tex. Ct. App. 2002)

19

(citing U.S. Const. amend. VII)). As the claims and remedies available to Sullivan for breach of the "APA" are separate and independent of the "Contract" dispute, and there being no agreement to arbitration, such claims should not be subject to arbitration.

¶56. Because Sullivan is seeking to impose liability for breach of the "Contract" upon ATX as alter ego or parent company of Protex Weatherproofing, ATX should be able to invoke the protections of the arbitration provision. Therefore, the trial court did not err in granting defendants' motion to compel arbitration with respect to the "Contract" claims, and I concur with the plurality's determination to arbitrate the "Contract" claims. Conversely, Sullivan alleges separate and independent claims concerning the "APA," which are not subject to arbitration, and should properly be heard in a court of law, as neither ATX nor Protex Weatherproofing contractually sought arbitration of disputes or controversies arising out of or relating to the "APA," and the alleged breach of the "APA," did not arise out of or relate to disputes or controversies of the "Contract." Therefore, I disagree with the plurality's finding to force the claims related to the "APA" to arbitration, and I respectfully dissent.

**WALLER, P.J., EASLEY AND GRAVES, JJ., JOIN THIS OPINION.**