# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-IA-02502-SCT

*TERMINIX INTERNATIONAL, INC., LIMITED PARTNERSHIP, RAY STITES AND ANTHONY C. FAGAN*

*v.*

*DAVID RICE AND CYNTHIA O. RICE*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/12/2003 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | SAMUEL ERNEST LINTON ANDERSON |
| | ARTHUR F. JERNIGAN, JR. |
| | WILLIAM W. BUSCHING |
| ATTORNEYS FOR APPELLEES: | TERRY L. CAVES |
| | JERRY DEAN SHARP |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 12/09/2004 |

## CONSOLIDATED WITH
## NO. 2003-CA-02548-SCT

*RAY STITES, ANTHONY C. FAGAN AND TERMINIX INTERNATIONAL COMPANY, LIMITED PARTNERSHIP*

*v.*

*DAVID RICE AND CYNTHIA O. RICE*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/27/2002 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | SAMUEL ERNEST LINTON ANDERSON |
| | ARTHUR F. JERNIGAN, JR. |
| | WILLIAM W. BUSCHING |

ATTORNEYS FOR APPELLEES:      TERRY L. CAVES
                                    JERRY DEAN SHARP

NATURE OF THE CASE:         CIVIL - CONTRACT
DISPOSITION:                   REVERSED AND REMANDED - 12/09/2004
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     We must decide in this case whether the plaintiffs must pursue their claim in arbitration.

## BACKGROUND AND PROCEEDINGS

¶2.     Dr. David Rice contracted with Terminix International, Inc. to provide protection from termites for the home he and his wife, Cynthia, built in Laurel. The contract, called "Termite Protection Plan," provided that Terminix would protect the Rices' home against infestations of termites for an annual fee. If termite damage occurred during the contract term, Terminix agreed to arrange and pay for necessary repairs, not to exceed $100,000. The contract also contained an arbitration clause.

¶3.     When the Rices discovered extensive termite damage to their home, they attempted to reach a settlement with Terminix, but were unsuccessful. Rather than filing an arbitration proceeding as provided in the contract, the Rices filed suit in the Circuit Court of the Second Judicial District of Jones County, naming as defendants Terminix International Company, Limited Partnership, Ray Stites, and Anthony C. Fagan. The Complaint alleged gross negligence, intentional misrepresentation, grossly negligent misrepresentation, fraud, tortious

breach of contract and fraudulent inducement.[1]  Terminix included in its Answer a Motion to Compel Arbitration and a request that the trial court stay the proceedings pending arbitration. The Rices responded, contending that the arbitration clause was unconscionable and ambiguous and that Terminix's actions were not subject to the arbitration agreement.

¶4.    The trial court denied the motion to compel arbitration, holding (1) that the Rices did not know they were submitting to arbitration when Dr. Rice signed the contract with Terminix; (2) the arbitration clause was both procedurally and substantively unconscionable; and (3) the contract was one of adhesion that denied the Rices their constitutional right to a jury trial or judicial remedy.

¶5.    After unsuccessfully removing the matter to federal court, Terminix filed a motion for reconsideration by the circuit court.   When the trial court denied the motion for reconsideration, Terminix filed its request for the trial court to certify the matter for interlocutory appeal.   When its request for certification was denied, Terminix filed a Petition for Interlocutory Appeal with this Court, which we granted on the sole issue of the trial court's denial of the motion to compel arbitration.[2]   We now proceed to review the matter, de novo. ***East Ford, Inc. v. Taylor***, 826 So.2d 709, 713 (Miss. 2002).

## ANALYSIS

*The Federal Arbitration Act*

---

[1]Initially, the Rices filed two separate lawsuits which were eventually consolidated on August 13, 2003.

[2]Petitioners also filed a direct appeal pursuant to M.R.A.P. 4, in which they appealed the same issue.  This court consolidated petitioner's direct and interlocutory appeals in an Order granted February 12, 2004.

3

¶6.     Terminix contends the trial court's refusal to enforce the arbitration agreement violates the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"), which applies to written agreements to arbitrate contained in contracts "evidencing a transaction involving commerce." *Id*. at § 2. The Rices do not contest the applicability of the FAA to the contract.

¶7.     This Court has consistently recognized the existence of "a liberal federal policy favoring arbitration agreements," and has stated that "we will respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution." ***Russell v. Performance Toyota, Inc.***, 826 So.2d 719, 722 (Miss. 2002) (quoting ***I.P***. ***Timberlands Operating Co. v. Denmiss Corp.***, 726 So.2d 96, 104, 106, 107, 108 (Miss. 1998)). *See also* ***McKenzie Check Advance of Miss., LLC   v. Hardy***, 866 So.2d 446, 450 (Miss. 2004) (quoting ***Perry v. Thomas***, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987)). This Court has further stated:

> Articles of agreement to arbitrate, and awards thereon are to be liberally construed so as to encourage the settlement of disputes and the presumption will be indulged in favor of the validity of arbitration proceedings.
> * * *
> "In enacting § 2 of the Arbitration Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. Congress has thus mandated the enforcement of arbitration agreements." The Arbitration Act, resting on Congress's authority under the Commerce Clause, creates a body of federal substantive law that is applicable in both state and federal courts. "The sine qua non of the FAA's applicability to a particular dispute is an agreement to arbitrate the dispute in a contract which evidences a transaction in interstate commerce." Doubts as to the availability of arbitration must be resolved in favor of arbitration. "[U]nless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted."

* * *

4

> In addition to establishing a strong presumption in favor of arbitration, the Act also limits the role of the court to determining whether an issue is arbitrable. The court's sole function is to determine whether the claim is referable to arbitration. Once that determination is made, the court may not delve further into the dispute. "The courts ... have no business weighing the merits of a particular claim, or determining whether there is particular language in the written instrument which will support the claim."

*Russell,* 826 So. 2d at 722 (quoting *I.P. Timberlands,* 726 So. 2d at 104-08 (citations omitted).

¶8.     In determining motions to compel arbitration under the FAA, we must first determine whether the parties' dispute is within the scope of a valid arbitration agreement.  If so, we then consider "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." *Sullivan v. Mounger*,  882 So. 2d 129, 132 (Miss. 2004) (quoting *East Ford Inc. v. Taylor*, 826 So.2d 709, 713 (Miss. 2002)).

¶9.     To determine whether the parties agreed to arbitration, we simply apply contract law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995).  The arbitration agreement between Terminix and Rice is valid on its face. There is no evidence suggested to us of procedural or substantive unconscionability or fraudulent inducement.  Furthermore, it is without question that the Rices' claims are within the scope of the arbitration provision, as they are claims and controversies that directly challenge Terminix's performance of the contract. We now must examine whether plaintiffs have demonstrated evidence of "legal constraints external to the parties' agreement" that would foreclose arbitration of the claims. *Sullivan v. Mounger*,  882 So. 2d at 132 (quoting *East Ford Inc. v. Taylor*, 826 So.2d at 713).  We find none.

¶10.    The trial court's denial of the motion to compel arbitration was error under the Federal Arbitration Act.    As earlier stated, we are mandated by federal law to enforce arbitration agreements contained in contracts involving commerce.    The FAA mandates that arbitration agreements "**shall be** valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (emphasis added).  Thus, we can place no more burden or constraint on the enforcement of an arbitration provision than on an agreement to sell a fig or pay a wage.

¶11.    The FAA further requires that, whenever a valid arbitration agreement exists between parties to an action, a court must "stay trial of the action until arbitration has been had in accordance with the terms of the parties' agreement." 9 U.S.C. § 3.

¶12.    The arbitration clause before us satisfies the requirements articulated in *Sullivan* and should have been enforced in light of the strong policy favoring arbitration and the federal statutory requirement that arbitration provisions be enforced, "save upon such grounds as exist at law or in equity for the revocation of any contract".  9 U.S.C. § 2.

*Unconscionability*

¶13.    The Rices next ask us to find the arbitration agreement procedurally unconscionable. They claim Dr. Rice did not know of the existence of the arbitration agreement and did not understand its meaning.  The Rices point out that the contract was presented to Dr. Rice while he was at home on his lunch break.  They claim he did not have time to study it, and he was not told of the arbitration clause before he signed the agreement.

¶14.    The Rices also point out that Terminix had been treating the Rices' home for a year under a verbal agreement before the written agreement was signed and that Dr. Rice had no

6

reason to know that an arbitration clause was contained in the written agreement. The Rices submit that the language containing the arbitration agreement was inconspicuous and did not stand out from the rest of the contract. Finally, the Rices allege that the disparity of sophistication and bargaining power of the parties, and Terminix's use of complex legalistic language in the arbitration clause, render the arbitration clause unenforceable.

¶15. Terminix responds that Dr. Rice's lack of knowledge or understanding of the details of the arbitration process does not render the contract -- or the arbitration clause -- procedurally unconscionable. "Procedural unconscionability may be proved by showing a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or lack of opportunity to study the contract and inquire about the contract terms." *Russell,* 826 So.2d at 725 (quoting *East Ford Inc. v. Taylor*, 826 So.2d at 714).

¶16. The arbitration clause in the Rices' contract is on the page labeled "General Conditions." Of the eleven conditions listed numerically in single spaced typed font, the arbitration clause is number nine and appears as follows:

> **9. ARBITRATION**. The Purchaser and Terminix agree that any controversy or claim between them arising out of or relating to the interpretation, performance or breach of any provision of this agreement shall be settled exclusively by arbitration. Such arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association. The arbitration award shall be final and binding on both parties. Judgment upon such arbitration award may be entered in any court having jurisdiction.

¶17. From the record, it appears that the Rices' contract with Terminix was only two pages long, and all of the conditions placed upon the contract were listed on one page. The

7

arbitration clause appears under its own subheading entitled "ARBITRATION," which is printed in bold capital letters. The entire arbitration clause consists of four typed lines in the same font as the rest of the page. The clause is likely to be noticed by anyone reading the "General Conditions."

¶18. It is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it. *McKenzie Check Advance of Miss., LLC v. Hardy*, 866 So.2d at 455. (citing *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.*, 584 So.2d 1254, 1257 (Miss. 1991), *Koenig v. Calcote*, 199 Miss. 435, 25 So.2d 763 (1946), *McCubbins v. Morgan*, 199 Miss. 153, 23 So.2d 926 (1945)). Under *McKenzie*, the law presumes that Dr. Rice read the agreement he signed with Terminix. Had he done so, he would have seen the arbitration clause in the contract. Furthermore, this Court has held that "[i]n Mississippi, a person is charged with knowing the contents of any document that he executes." *Russell,* 826 So.2d at 725 (citing *J.R. Watkins Co. v. Runnels*, 252 Miss. 87, 172 So.2d 567, 571 (1965) ("A person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him."))). Therefore, the Rices were on notice of the arbitration clause, whether they read it or not. Accordingly, we reject the argument that the arbitration clause should not be enforced because the Rices were unaware of its existence.

¶19. The Rices have provided us no evidence of lack of voluntariness to enter the contract or a lack of opportunity to study the contract and inquire about its terms. They were not required to hire Terminix for its services, and the fact that Dr. Rice signed the contract during his lunch break is not evidence of lack of time or opportunity to read the contract terms. He

8

provides no evidence that he could not have signed the contract at another time, had he chosen to do so.

¶20.    We shall briefly comment on the Rices' allegation of disparity in sophistication and bargaining power.  Dr. Rice is a dentist, and a founding organizer and member of the board of directors of the First National Bank of the Pine Belt.  Mrs. Rice has a master's degree in English Education.   The Rices had the freedom to hire another company to perform the services, had they chosen to do so.   Furthermore, the arbitration clause language does not qualify as complex legalistic language.   Finally, the arbitration clause was not hidden or obscured by the use of inconspicuous print.

¶21.    In sum, the arbitration clause is not procedurally unconscionable.  The trial court erred when it denied the motion to compel arbitration on this ground.

¶22.    The trial court also found that the arbitration clause was substantively unconscionable, but this issue is not addressed by either party.  There is nothing to suggest that the terms of the arbitration clause are oppressive, and the trial court erred in denying the motion to compel arbitration on this ground.

*Waiver.*

¶23.    The Rices say that Terminix waived its right to arbitration by submitting to the litigation and by agreeing to a Scheduling Order entered by the trial court.  Upon receiving the Rices' complaint, Terminix filed its Answer and Defenses, and included as its first defense a Motion to Compel Arbitration.  This motion was denied by the trial court, and the parties proceeded with discovery.  The Rices argue that Terminix's participation in discovery after the motion to

compel was denied (particularly, by signing the Scheduling Order and taking depositions), demonstrated a "disinclination to arbitrate," and thus waived any right to arbitrate this dispute.

¶24. We disagree. When its motion to compel arbitration was denied by the trial court, Terminix had no choice but to proceed with discovery. Had it refused to do so, Terminix would have found itself in violation of the orders of the trial court and the Mississippi Rules of Civil Procedure. By including the motion to compel arbitration in its answer, Terminix complied with Mississippi Rule of Civil Procedure 8(c) and sufficiently preserved this issue for appeal. The Rices were put on sufficient notice of Terminix's desire to arbitrate the dispute. *See Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 421 (5th Cir. 1985). Terminix has not waived its right to arbitration by participating in the litigation.

¶25. Finally, the Rices say that because Terminix agreed to the Scheduling Order entered by the trial court on December 16, 2002, it was contractually bound to submit to a jury trial. We find this argument novel, creative, and without merit. The Rices cite no case law to support this proposition. A scheduling order is not a contract between the parties, but rather an order of the court.

*Fraudulent inducement*

¶26. Although the Rices allege that the arbitration agreement is the result of fraudulent inducement by Terminix, they provide us with no evidence to support the claim.

*Cynthia Rice.*

10

¶27.  Cynthia did not sign the agreement with Terminix.  Thus, the Rices claim, she is not bound by the arbitration agreement.[3]  The United States Court of Appeals for the Fifth Circuit recently addressed this issue in ***Washington Mutual Finance Group, LLC v. Bailey***, 364 F.3d 260 (5th Cir. 2004).  In ***Bailey***, a plaintiff (Mrs. Phinizee) insisted she could not be compelled to arbitrate her claim because her husband signed the agreement, but she had not.  *Id*. at 266.  The court rejected this argument and held:

> It does not follow . . . that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision. [We have made] clear that a nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency.

*Id*. (quoting ***Thomson-CSF, S.A. v. Am.  Arbitration Ass'n***, 64 F.3d 773, 776 (2d Cir. 1995 1995) (citations & quotations omitted)).

¶28.  The ***Bailey*** court held that Mrs. Phinizee was bound to the arbitration agreement under ordinary principles of contract law, including equitable estoppel.  The court stated:

> In the arbitration context, the doctrine [of estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.  To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.

*Id*. at 268 (quoting ***Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH***, 206 F.3d 411, 418 (4th Cir. 2000) (citations & quotations omitted)).

---

[3]It is doubtful that the Rices actually hope to succeed with this argument, since Cynthia would have no standing or right to sue Terminix at all.  Terminix would owe her no contractual duty and thus could not be liable to her for contractual damages.

¶29. We adopt the same principles announced by the court in *Bailey*, and hold that Mrs. Rice is bound by the arbitration clause in the contract signed by Dr. Rice.

¶30. The Rices' final argument is that the arbitration agreement is unenforceable against Mrs. Rice because it constitutes an impermissible encumbrance on her homestead. As authority, the Rices cite Miss. Code Ann. § 89-1-29 (1999), which states: "A conveyance, mortgage, deed of trust or other encumbrance upon a homestead exempted from execution shall not be valid or binding unless signed by the spouse of the owner if the owner be married and living with the spouse . . . ." The Rices contend that the arbitration agreement amounts to such an encumbrance on the Rices' homestead and, since Mrs. Rice did not sign the contract, the encumbrance is void.

¶31. This argument is without merit. The contract between the Rices and Terminix did not affect Mrs. Rice's ownership interest in her homestead as contemplated by the statute. The Rices point to no legal authority supporting this theory, and we find it to be meritless.

## CONCLUSION

¶32. The trial court erred in denying Terminix's Motion to Compel Arbitration. Therefore, its judgment is reversed, and these cases are remanded with instructions to the trial court to enforce the arbitration agreement.

¶33. **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY AND CARLSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**