# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 31, 2017

Lyle W. Cayce
Clerk

No. 16-60303

ASSURED GUARANTY CORPORATION, Successor in interest to Radian Asset Assurance Incorporated,

        Plaintiff–Appellee,

v.

MADISON COUNTY, MISSISSIPPI, acting by and through its duly elected Board of Supervisors,

        Defendant–Appellant.

Appeals from the United States District Court
for the Southern District of Mississippi
USDC No. 3:13-CV-686

Before KING, JOLLY, and PRADO, Circuit Judges.

PER CURIAM:*

This case stems from a dispute over the interpretation of a Contribution Agreement between Appellant Madison County, Mississippi ("the County"), and Parkway East Public Improvement District ("Parkway East"), a Mississippi special-purpose government entity. Appellee Assured Guaranty Corporation ("Assured") insured bonds issued by Parkway East. Assured seeks

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60303

a declaratory judgment finding the Contribution Agreement valid and obligating the County to advance bond payments regardless of whether Parkway East reimburses the County within the two-year period described in the contract. The district court found in favor of Assured, and the County now appeals. Because the plain language of the Contribution Agreement conditions the County's advancement obligation on Parkway East's performance of its obligations, we REVERSE and REMAND for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 22, 2002, the County created a special-purpose government entity called Parkway East under Mississippi Code § 19-31-1.[1] "Parkway East was created for the purpose of financing and managing the acquisition, construction, and operation of capital infrastructure improvements within the 1,050 acres of land that comprise" the district. Landowners within Parkway East are responsible for "all costs and expenses to be incurred by Parkway East in the construction and financing of the District Project and/or in the furtherance of Parkway East's purposes." To this end, in July 2005, Parkway East issued special assessment bonds in an aggregate principal amount of $27,770,000. The final maturity date of the bonds is 2030. Proceeds from the bonds are to be used to cover construction costs, and Parkway East is required to make bond payments by levying special assessments on parcels of land within the district.

On July 27, 2005, Parkway East and the County entered into a Contribution Agreement to help Parkway East market the bonds at a lower

---

[1] Two years later, Parkway East was divided into two districts—Parkway South and the Parkway East that now exists. When we refer to Parkway East in this opinion, we are referring to the newer iteration of that district.

interest rate.[2] The Contribution Agreement begins with a set of "whereas" provisions establishing the facts underlying the agreement. Among other things, this portion of the contract includes a paragraph describing the purpose of the Contribution Agreement as "memorializ[ing] [the parties'] mutual understanding with respect to the joint participation of the County and Parkway East in the financing of public infrastructure improvements and facilities to be located within the County and Parkway East." These paragraphs are then followed by seventeen numbered sections describing a series of "mutual covenants and promises."

Section 3 of the Contribution Agreement, which is at issue in this case, describes three obligations by which the County and Parkway East are bound. The parties disagree about the following portions of Section 3: (1) a promise that the County advance funds when Parkway East cannot make bond payments if the County is satisfied with Parkway East's performance of its obligations under the Contribution Agreement, and (2) a requirement that Parkway East reimburse the County for such advances within two years of when they are made.

In connection with its issuance of bonds, Parkway East also purchased a bond insurance policy from Radian Asset Assurance, Inc. ("Radian"). During this litigation, Radian was purchased by Assured. Thus, Radian's assets and obligations became the assets and obligations of Assured.[3] As bond insurer, Assured only makes bond payments if a shortfall remains after applying funds from special assessment collections and any contribution made by the County.

---

[2] Assured also posits that the Contribution Agreement made the bonds eligible for bond insurance.

[3] Hereinafter, for convenience, we will refer to the bond insurer as "Assured" regardless of whether Radian or Assured actually took the action(s) being described.

No. 16-60303

Unfortunately, the anticipated commercial development of Parkway East never materialized. And in October 2011, Parkway East, being unable to make its regularly scheduled bond payments, requested that the County, pursuant to Section 3 of the Contribution Agreement, advance payment to service the debt. The County advanced bond payments four times—in October 2011, April 2012, October 2012, and April 2013. On October 18, 2013, the County refused to make any further advance payments because Parkway East had failed to reimburse the County within two years, an obligation the County alleged had to be fulfilled before the County was required to make advances. Since November 2013, Assured has, and continues to, advance funds to cover any bond payment deficiencies.

On November 1, 2013, Assured sued the County seeking, among other things, a declaration that the County is obligated to continue advancing funds under the Contribution Agreement regardless of whether Parkway East reimburses the County within two years.[4] On November 21, 2014, both parties filed motions for partial summary judgment. In April 2015, the district court entered an order granting in part and denying in part Assured's motion and denying the County's motion. As relevant to this appeal, the district court held that the two-year reimbursement requirement in Section 3 of the Contribution Agreement was not a condition precedent to the County's obligation to advance bond payments. That said, the court did acknowledge the conditional nature of the County's obligation to make bond payments and agreed with the County that Parkway East's reimbursement obligation was binding on it. The district court also determined that the County's obligation to make such advance payments lasted for the life of the bonds.

---

[4] Assured can sue for enforcement of the contract as a third-party beneficiary to the Contribution Agreement.

4

No. 16-60303

In March 2016, Assured filed a second motion for partial summary judgment, which the district court granted on April 27, 2016. In its order, the district court once again found that the County was obligated to advance payments so long as the bonds remained outstanding, regardless of whether Parkway East reimbursed the County within two years. The court further ordered the County to pay Assured $3,160,616.70—$1,153,211.47 to reimburse Assured for payments it made servicing the debt, and $2,007,405.23 to replenish Parkway East's Debt Service Reserve Fund. This appeal followed.

## II. DISCUSSION

This Court reviews a grant of summary judgment de novo using the same standard as the district court. *Fireman's Fund Ins. Co. v. Murchison*, 937 F.2d 204, 207 (5th Cir. 1991). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

This Court also reviews de novo the initial determination of whether a contract is ambiguous. *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 352 (5th Cir. 1996). Where a contract is unambiguous, interpretation of that contract is likewise a question of law reviewed de novo. *Id.* But if a contract is ambiguous and its interpretation requires the Court to consider extrinsic evidence, we review for clear error. *Id.* The applicable rules of contract interpretation are furnished by state law—here, that of Mississippi. *Id.*

The Mississippi Supreme Court has laid out the following tiered approach to contract interpretation:

> First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. Second, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. It is only when

the review of a contract reaches this point that prior negotiations, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract.

*Tupelo Redevelopment Agency v. Abernathy*, 913 So. 2d 278, 284 (Miss. 2005) (citations omitted). When looking at the language of a contract, a court must "read the contract as a whole, so as to give effect to all of its clauses." *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003).

The controversy in this case centers on Section 3 of the Contribution Agreement:

> County Contribution. **[1]** Provided that the covenants, agreements and obligations of Parkway East as stated herein are performed and/or provided to the County's satisfaction, the County hereby agrees that in the event Parkway East fails, for any reason, to levy and/or collect (or have collected) a sufficient amount of Special Assessments from the owners of land within Parkway East in order to satisfy any Debt Service Payment, the County shall advance to the paying agent, and/or the Bond trustee, the outstanding amount required to satisfy the deficient Debt Service Payment. **[2]** The parties also agree that, in the event of a sale of a parcel of land for taxes (pursuant to Section 19-31-33 of the Act) upon which a Special Assessment was levied but not collected, the County shall be immediately reimbursed for the County's advance to such deficiency with the proceeds of such tax sale. The Amount of such reimbursement shall be equal to the amount the County advanced to the paying agent, and/or the Bond trustee, pursuant to this Section 3, including any interest accrued thereon at the statutory rate. **[3]** Notwithstanding the above, Parkway East hereby covenants and agrees to provide full reimbursement to the County, no later than two (2) years from the date the deficient Debt Service Payment is made, for the amounts the County provides to the paying agent, and/or the Bond trustee, pursuant to this Section 3, regardless of the source of the Parkway East funds to pay such reimbursement.[5]

---

[5] To aid in explanation we have numbered this provision and will hereinafter refer to Parts 1, 2, and 3.

No. 16-60303

In essence: Part 1 obligates the County to advance bond payments when Parkway East cannot make them; Part 2 provides that when a parcel of land is sold for taxes, Parkway East shall immediately use that money to reimburse the County for any advances it has made; and Part 3 otherwise requires Parkway East to reimburse the County for bond-payment advances within two years of when the advances were made.

The parties agree that the Contribution Agreement is unambiguous, but disagree about the import of Part 3. The County argues that Part 3's reimbursement provision is a condition precedent to its obligation to advance funds for bond payments. In other words, the County contends that if Parkway East fails to reimburse it for bond-payment advances within two years of when the advances are made, it is no longer required to make any future advance payments. Assured, however, argues that Part 3's reimbursement provision is separate and removed from any conditional language in Part 1 and accordingly that reimbursement is not a condition precedent to the County's obligation to make advance payments under Part 1. Thus, Assured posits that the County is obligated to make bond-payment advances as long as the bonds remain outstanding, regardless of whether Parkway East ever reimburses the County. Section 12 of the Contribution Agreement provides that the agreement shall last for "the duration of any Bonds issued by Parkway East."

## A.    The Plain Text of the Contribution Agreement

As an initial matter, both parties agree that the plain meaning of the words "provided that," which begin Part 1, is to create a condition. *See Provided, Webster's New Collegiate Dictionary* (1975) (defining "provided" to mean "on condition that"). But the parties disagree over which "covenants, agreements and obligations" are included in the condition created by Part 1.

Assured argues that the covenant set forth by Part 3 is not one of the covenants to which Part 1 refers because Parts 1 and 3 are both spatially and

syntactically separated from one another.  Assured argues that: (1) there is no connection between Parts 1 and 3 because the two are separated by several sentences, and (2) the words "[n]otwithstanding the above," which begin Part 3, "carve out" the reimbursement provision from any condition created by Part 1.

Assured's arguments are unpersuasive. The plain text of the contract does not suggest that the "covenants, agreements and obligations" referred to in Part 1 are limited to any particular set of covenants provided in the contract. Rather, the condition in Part 1 refers generally to any covenant in the Contribution Agreement to which Parkway East agreed. Moreover, use of the word "notwithstanding" in Part 3 does not carve out any promise created by the sentence that follows. The plain meaning of "notwithstanding" is "in spite of" or "despite." *Notwithstanding, Webster's New Collegiate Dictionary* (1975); *see also Adams v. Baptist Mem'l Hosp.-Desoto, Inc.*, 965 So. 2d 652, 656 (Miss. 2007) (defining "notwithstanding" to mean "(1) In spite of; (2) Nevertheless; (3) In spite of the fact that"). Consistent with this definition, there is also general agreement among courts that "a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993); *see also, e.g.*, *Warberg Opportunistic Trading Fund, L.P. v. GeoResources, Inc.*, 973 N.Y.S.2d 187, 191 (N.Y. App. Div. 2013) ("It is well settled that trumping language such as a 'notwithstanding' provision 'controls over any contrary language' in a contract."); *cf. Adams*, 965 So. 2d at 656 (holding that "notwithstanding" language in a subsection of a state statute overrode a specifically identified conflicting subsection). We agree with this interpretation.

Given that the plain meaning of "notwithstanding" is "in spite of," logic dictates that the word "notwithstanding" implies some contradiction regarding

8

what it refers to. Thus, Assured is only correct that the reimbursement covenant in Part 3 is carved out from the remainder of the provision at issue if Part 3 contradicts both Parts 1 and 2. However, only Part 2—requiring immediate reimbursement by Parkway East under certain circumstances—conflicts with the two-year reimbursement requirement of Part 3. Part 1, on the other hand, is wholly consistent with Part 3. There is no tension between a requirement that the County advance bond payments when Parkway East is unable to make them if Parkway East satisfies its obligations under the Contribution Agreement (Part 1) and a requirement that Parkway East reimburse the County for such advances within two years of when they are made (Part 3). Accordingly, we find that the language "notwithstanding the above" does not carve out Parkway East's obligation to reimburse the County from the obligations referred to in Part 1.

Assured also argues that requiring Parkway East to reimburse the County for bond-payment advances is nonsensical because if Parkway East is unable to make bond payments and the County then advances payment, Parkway East clearly cannot afford to reimburse the County. This argument is unpersuasive for two reasons. First, the event triggering the County's obligation to advance bond payments is Parkway East's failure to "levy and/or collect (or have collected) a sufficient amount of Special Assessments from the owners of land within Parkway East." But Parkway East is required to reimburse the County within two years of an advance "regardless of the source of . . . funds." Accordingly, it is entirely possible that Parkway East would be unable to levy or collect a sufficient amount of funding from special assessments to cover the bond payments but would be able to use other funding sources to reimburse the County. For example, in at least one instance, Parkway East used money from the Revenue Fund, at the County's request, to make bond payments in November 2009 because insufficient special

assessments had been levied/collected. Second, as the County points out in its reply brief, the reimbursement provision gives Parkway East two years to recover its financial footing. Indeed, Part 2 of the provision clearly illustrates one way in which this could occur—Parkway East could have collected insufficient special assessments when bond payments became due but later could have sold a parcel of land, giving it the ability, and obligation, to reimburse the County immediately for a previous advance. Thus, there is nothing necessarily illogical about requiring Parkway East to reimburse the County for bond-payment advances within two years.

## B.   The Amortization Approval Certificate

### 1. *The Language*

Assured also argues that the Amortization Approval Certificate ("the Certificate"), signed by the County at bond closing, unambiguously shows that the reimbursement provision is not one of the covenants on which the County's obligation to advance bond payments is conditioned. Under Mississippi law, a court can construe several documents together to form a single instrument where "they are executed at the same time, by the same parties, as part of the same transaction." *Avakian v. Citibank, N.A.*, 773 F.3d 647, 652 (5th Cir. 2014) (quoting *Sullivan v. Mounger*, 882 So. 2d 129, 135 (Miss. 2004)). This is true even where the documents do not "include a written provision which specifically recites that all documents are part of an integrated, or global, transaction." *Id.* (quoting *Sullivan v. Protex Weatherproofing, Inc.*, 882 So. 2d 256, 259–60 (Miss. 2005)). Because the Certificate and Contribution Agreement meet these requirements, we construe them together.

The Certificate, signed by a County representative, provides the following:

> I, Paul Griffin, President of the Board of Supervisors of Madison County, Mississippi (the "County"), pursuant to and as required by

> Sections 5 and 7 of that certain Contribution Agreement dated July 27, 2005 (the "Contribution Agreement") by and between the County and the Parkway East Public Improvement District (the "District"), for and on behalf of the County do hereby approve the bond amortization and debt service schedule attached as **Exhibit A** hereto in connection with the District's $27,770,000 Special Assessment Bonds, Series 2005, dated July 27, 2005, and further state, for and on behalf of the County, that *the covenants, agreements and obligations of the District* as stated in the Contribution Agreement *have been performed and/or provided to the County's satisfaction.*

Assured argues that the language in the Certificate describing Parkway East's "covenants, agreements and obligations" that must be performed to "the County's satisfaction"[6] evinces a limitation on what conditions are specified by this language. Given that the Certificate was signed at bond closing, Assured claims it would not make sense for the County to agree that Parkway East's obligations had been performed to the County's satisfaction where Parkway East would not yet have had the opportunity to perform—for example, in the case of the reimbursement requirement.[7] Accordingly, Assured contends that the "covenants, agreements and obligations" to which the Certificate refers only include those that would have been performed at the time of bond closing. Because the Certificate and Part 1 of the Contribution Agreement contain near-identical condition of satisfaction clauses, Assured concludes that the condition created in Part 1 of the Contribution Agreement provision likewise only refers to the conditions Parkway East would have performed at the time of the bond closing. Thus, according to Assured, the County's duty to advance bond payments is not be conditioned on Parkway East's promise to reimburse.

---

[6] We will also refer to this language as a "condition of satisfaction clause" or "condition of satisfaction language."

[7] In fact, the County enumerates seven other obligations Parkway East bore under the Contribution Agreement and that Parkway East would not have performed at bond closing.

No. 16-60303

Assured's argument falls short. While Assured is correct that the condition of satisfaction language in the Certificate must only have related to the covenants Parkway East was able to perform before bond closing, an identical understanding cannot extend to the Contribution Agreement. As the County outlines in its reply brief, under Assured's interpretation, none of the post-closing covenants in the Contribution Agreement could serve as conditions precedent to the County's obligation to make advance payments. Parkway East could "sell land for taxes and not reimburse the County, sell land for residential purposes and not use proceeds to redeem bonds, refuse to allow the County to have parcels appraised, not maintain a construction contingency fund, or fail to reimburse the County for its advances" and the County would still be required to advance bond payments. Because Assured's interpretation makes Part 1's conditional language superfluous, the condition of satisfaction language in Part 1 must unqualifiedly refer to *all* the "covenants, agreements and obligations" created by the Contribution Agreement. S*ee S. Ry. Co. v. Anderson & Fuller*, 130 So. 743, 744 (Miss. 1930) (holding that all contract provisions must be given effect).

This interpretation is also consistent with the Certificate's language. It is possible that both the Certificate and Contribution Agreement require the County to be satisfied that Parkway East is performing its obligations under the contract, but that these evaluations occur at different times and thus inherently include different obligations. While the Certificate requires the County to assess its satisfaction with Parkway East's conduct at the time of bond closing, the Contribution Agreement requires the County to do the same when Parkway East is unable to make a bond payment. Accordingly, we conclude that the Contribution Agreement unambiguously conditions the County's obligation to advance bond payments on Parkway East's performance

12

of all its covenants under the Contribution Agreement—including its promise to reimburse the County.

### 2. *Quasi-Estoppel*

Finally, Assured contends that the Certificate serves to estop the County from asserting that it is dissatisfied with Parkway East's performance and accordingly suspending bond payments. Mississippi's doctrine of quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position [it has] previously taken." *Bailey v. Estate of Kemp*, 955 So. 2d 777, 782 (Miss. 2007) (alteration in original) (quoting *Bott v. J.F. Shea Co., Inc*, 299 F.3d 508, 512 (5th Cir. 2002)). Quasi-estoppel "applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Id.* (quoting *Bott*, 299 F.3d at 512).

Assured's quasi-estoppel argument is only compelling if the County signed the Certificate intending to agree that it was satisfied with Parkway East's performance of *all* its obligations under the Contribution Agreement—including those that Parkway East could not possibly have performed by bond closing. Because such an interpretation makes little sense, we hold that the County is not estopped from arguing that Parkway East's performance was unsatisfactory and suspending bond payments.

### III. CONCLUSION

For the foregoing reasons, we hold that Section 3 of the Contribution Agreement unambiguously conditions the County's duty to advance bond payments on Parkway East's reimbursement of such advances within two years. Accordingly, we REVERSE the district court's grant of summary judgment and REMAND the case for further proceedings consistent with this opinion.